UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>                    Plaintiff,<br>v.<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP,<br><br>                    Defendant. | No. 11-cv-05994 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>                    Plaintiff,<br>v.<br><br>DUANE MORRIS LLP,<br><br>                    Defendant. | No. 11-cv-05969 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>                    Plaintiff,<br>v.<br><br>K&L GATES LLP,<br><br>                    Defendant. | No. 11-cv-05993 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>                    Plaintiff,<br>v.<br><br>MORRISON & FOERSTER LLP,<br><br>                    Defendant. | No. 11-cv-05985 (CM) |

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> SHEPPARD MULLIN RICHTER & HAMPTON LLP, <br><br> Defendant. | No. 11-cv-05971 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> DLA PIPER (US) LLP, <br><br> Defendant. | No. 11-cv-05983 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> DECHERT LLP, <br><br> Defendant. | No. 11-cv-05984 (CM) |

## JOINT MEMORANDUM OF LAW IN SUPPORT OF LAW FIRM DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Dated:  New York, New York
          December 9, 2011

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

     A.     Coudert's Dissolution and Bankruptcy .................................................... 3

     B.     The Profits Claims ................................................................................... 4

     C.     Status of the Actions ............................................................................... 5

     D.     The Law Firm Defendants' Motions for Summary Judgment .................. 5

ARGUMENT ............................................................................................................. 6

I.     COUDERT HAS NO PROPERTY INTEREST IN CLIENTS OR UNFINISHED
     LEGAL REPRESENTATIONS ............................................................................. 6

II.     DISSOLUTION DOES NOT CREATE  RIGHTS THAT OTHERWISE DO NOT
     EXIST ............................................................................................................. 10

     A.     Coudert Has No Cognizable Interest in the Law Firm Defendants' Post-
     Dissolution Profits on the Matters ........................................................... 11

     B.     NYPL §§ 40 and 43 Do Not Give Coudert Greater Rights in Dissolution ........... 15

     C.     DSI's Reliance on Non-New York Authorities Is Misplaced .................. 16

III.     DSI'S PROFITS CLAIMS FAIL FOR ADDITIONAL REASONS ................................ 20

     A.     The Accounting and Turnover Claims ..................................................... 20

     B.     The Unjust Enrichment Claims ................................................................ 21

     C.     The Conversion Claims ............................................................................ 23

D.    Former Coudert Partners Who Withdrew from Coudert Prior to the Dissolution Date..............................................................................................24

CONCLUSION.............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby,*
  277 U.S. 242 (1986)..................................................................................... 6

*Ashland Inc. v. Morgan Stanley & Co.,*
  652 F.3d 333 (2d Cir. 2011)........................................................................ 22

*Bank of N.Y. v. First Millennium, Inc.,*
  607 F.3d 905 (2d Cir. 2010)......................................................................... 6

*Berry v. Deutsche Bank Trust Co. Ams.,*
  No. 07 Civ. 7634, 2008 U.S. Dist. LEXIS 76104 (S.D.N.Y. Sept. 30, 2008) ...................... 23

*Brobeck, Phleger & Harrison LLP v. Greenspan,*
  408 B.R. 318 (Bankr. N.D. Cal. 2009) ...................................................... 18

*Burke v. Clifton, Budd & DeMaria,*
  Index No. 1454/91-002 (Sup. Ct. N.Y. County Dec. 9, 1991) ......................... 9, 12

*Burke v. Clifton, Budd & DeMaria,*
  Index No. 1454/91-003 (Sup. Ct. N.Y. County July 27, 1992) ............................ 13

*Butner v. United States,*
  440 U.S. 48 (1979)...................................................................................... 10

*Campagnola v. Mulholland, Minion & Roe,*
  76 N.Y.2d 38 (1990) .................................................................................... 7

*Cohen v. Grainger, Tesoriero & Bell,*
  81 N.Y.2d 655 (1993) .................................................................................. 8

*Cohen v. Lord, Day & Lord,*
  75 A.D.2d 817 (2d Dep't 1980) .................................................................. 9

*Cohen v. Lord, Day & Lord,*
  75 N.Y.2d 95 (1989) .................................................................................... 8

*Colavito v. New York Organ Donor Network, Inc.,*
  8 N.Y.3d 43 (2006) ..................................................................................... 23

*Daub v Future Tech Enter., Inc.,*
  65 A.D.3d 1004 (2d Dep't 2009)................................................................. 23

*Demov, Morris, Levin & Shein v. Glazer,*
  53 N.Y.2d 553 (1981) .................................................................................. 7

*First Fidelity Bank v. McAteer,*
  985 F.2d 114 (3d Cir. 1993)........................................................................ 11

*Frates v. Nichols,*
  167 So. 2d 77 (Fla. Dist. Ct. App. 1964) ............................................... 18

*Graubard Mollen Horowitz Pomeranz & Shapiro v. Moskovitz,*
  149 Misc. 2d 481 (Sup. Ct. N.Y. County 1990) ..................................... 9

*High View Fund, L.P. v. Hall,*
  27 F. Supp. 2d 420 (S.D.N.Y. 1998)........................................................ 23

*Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.),*
  198 B.R. 45 (S.D.N.Y. 1996).................................................................... 21

*Howard v. Babcock,*
  863 P.2d 150 (Cal. 1993) .......................................................................... 17

*In re Cooperman,*
  83 N.Y.2d 465 (1994) ................................................................................. 7

*In re Suter,*
  181 B.R. 116 (Bankr. N.D. Ala. 1994) ................................................... 11

*Jewel v. Boxer,*
  156 Cal. App. 3d 171 (Cal. Ct. App. 1986) .............................. 16, 17, 19

*Kirsch v. Leventhal,*
  181 A.D.2d 222 (3d Dep't 1992) ...................................................... 12, 19

*Labrum & Doak, LLP v. Ashdale,*
  227 B.R. 391 (Bankr. E.D. Pa. 1998) ..................................................... 18

*Mandel v. Grunfeld,*
  138 A.D.2d 982 (1st Dep't 1988) ............................................................ 12

*Mandel v. Grunfeld,*
  No. 3144/85 (Sup. Ct. N.Y. County Mar. 31, 1987)......................... 11, 14

*Marr v. Langhoff,*
  589 A.2d 470 (Md. 1991) .................................................................. 17, 18

*Mfrs. Hanover Trust Co. v. Chem. Bank,*
  160 A.D.2d 113 (1st Dep't 1990) ............................................................ 23

*Nixon Peabody LLP v. de Senilhes,*
  No. 10374/2008, 2008 N.Y. Misc. LEXIS 5770, 2008 N.Y. slip op. 51885U
  (Sup. Ct. Monroe County Sept. 16, 2008) ............................................... 8

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.),*
  343 B.R. 444 (Bankr. S.D.N.Y. 2006)..................................................... 21

*Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.,*
  320 F.3d 362 (2d Cir. 2003)........................................................................ 6

*Paramount Film Distrib. Corp. v. New York*,
   30 N.Y.2d 415 (1972) ................................................................................................... 22

*Redtail Leasing v. Bellezza*,
   No. 95 Civ. 5191, 1997 U.S. Dist. LEXIS 14821 (S.D.N.Y. Sept. 29, 1997) ...................... 22

*Rogath v. Koegel*,
   No. 96 Civ. 8729, 1998 U.S. Dist. LEXIS 15624 (S.D.N.Y. Oct. 2, 1998) .......................... 24

*Salans Hertzfeld Heilbronn Christy & Viener v. Between the Bread East, Inc.*,
   290 A.D.2d 381 (1st Dep't 2002) ..................................................................................... 8

*Santalucia v. Sebright Transp., Inc.*,
   232 F.3d 293 (2d Cir. 2000) ........................................................................................... 12

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,
   325 B.R. 134 (Bankr. S.D.N.Y. 2005) ............................................................................. 21

*Shandell v. Katz*,
   217 A.D.2d 472 (1st Dep't 1995) ................................................................................... 12

*Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP*,
   Index No. 150178/2010 (Sup. Ct. N.Y. County Sept. 13, 2011) ...................................... 13

*Silverberg v. Schwartz*,
   81 A.D.2d 640 (2d Dep't 1981) ..................................................................................... 14

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301 (1st Dep't 2007) ..................................................................................... 22

*Steinberg v. Schnapp*,
   73 A.D.3d 171 (1st Dep't 2010) ..................................................................................... 9

*Stern v. Marshall*,
   --- U.S. ----, 131 S. Ct. 2594 (2011) ............................................................................. 18

*Sufrin v. Hosier*,
   896 F. Supp. 766 (N.D. Ill. 1995) ............................................................................. 17, 18

*Sullivan, Bodney & Hammond v. Sullivan*,
   820 P.2d 1248 (Kan. 1991) ..................................................................................... 17, 18

*Vollgraff v. Block*,
   117 Misc.2d 489 (Sup. Ct. Suffolk County 1982) ........................................................... 14

*Vowell & Meelheim, P.C. v. Beddow, Erben & Bowen, P.A.*,
   679 So. 2d 637 (Ala. 1996) ........................................................................................... 18

*Weiner's, Inc. v. T.G. & Y. Stores Co.*,
   191 B.R. 30 (S.D.N.Y. 1996) ......................................................................................... 21

**Statutes and Rules**

11 U.S.C. § 542 ........................................................................................................ 20

22 N.Y.C.R.R. § 1210.1 ............................................................................................... 7

N.Y. Partnership Law § 40 ................................................................................... *passim*

N.Y. Partnership Law § 43 ................................................................................... *passim*

N.Y. Partnership Law § 61 .......................................................................................... 24

N.Y. Partnership Law § 73 .......................................................................................... 12

N.Y. Rules of Prof'l Conduct R. 5.6 ............................................................................ 8

Fed. R. Civ. Pro. 56(a) ................................................................................................. 1

Defendants Akin Gump Strauss Hauer & Feld LLP, Duane Morris LLP, K&L Gates LLP, Morrison & Foerster LLP, Sheppard Mullin Richter & Hampton LLP, DLA Piper (US) LLP and Dechert LLP (collectively, the "Law Firm Defendants") respectfully submit this joint memorandum of law in support of their motions for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  The Law Firm Defendants move for summary judgment with respect to all claims against them, except that Dechert moves for partial summary judgment with respect to the Fourth, Fifth and Sixth claims against it.

## PRELIMINARY STATEMENT

The material facts relevant to these motions are undisputed.  Before the dissolution of Coudert Brothers LLP ("Coudert"), certain former partners of Coudert (the "Former Coudert Partners") worked on certain matters (the "Matters") for particular clients (the "Clients") that had retained Coudert.  The Former Coudert Partners withdrew from Coudert at various times, both pre- and post- dissolution, and each ultimately joined one of the Law Firm Defendants.  The Clients terminated their retention of Coudert with respect to the Matters, and at some point retained the Law Firm Defendants with respect thereto.  Plaintiff Development Specialists, Inc. ("DSI"), as plan administrator for Coudert, seeks recovery of the Law Firm Defendants' profits on legal services they performed for the Clients on the Matters (the "Profits Claims").

The Profits Claims fail as a matter of law.  Under applicable New York law, clients and unfinished matters are not law firm property.  A client has an absolute right to terminate an unfinished representation, for any reason, and a law firm may not restrict a former partner from competing for such clients and unfinished representations.  When a partner withdraws and a client retains the partner's new firm, the prior law firm's sole interest is to be

compensated for the services it performed prior to the client's termination of the attorney-client relationship. The prior law firm has no claim to the post-termination profits earned or to the value added by its former partner or the new firm. DSI's Profits Claims violate these well-established principles of New York law. *See* Point I.

DSI alleges that these principles do not apply in the dissolution context. To the contrary, dissolution does not create property rights or interests that do not otherwise exist. New York law holds that when a client terminates an unfinished representation due to the law firm's dissolution, the law firm's interest is the *same* as when a client terminates an unfinished representation for any other reason: the dissolved law firm has an interest in receiving the value of the services it actually performed *pre-dissolution*, and has *no* cognizable property interest in the *post-dissolution* services performed by its former partners or their new law firms, including with respect to the dissolved law firm's unfinished legal representations and former clients. *See* Point II(A).

Sections 40 and 43 of the New York Partnership Law ("NYPL"), cited by DSI in its complaints against the Law Firm Defendants (collectively, the "Complaints"),[1] do not change this result. They do not create property or rights in the dissolution context that do not otherwise exist. *See* Point II(B).

DSI's reliance on a handful of non-New York cases is misplaced because such decisions are contrary to New York law and policy. Moreover, the non-New York cases are wrongly decided. *See* Point II(C).

DSI's claims also fail as a matter of law for several other reasons. The Profits Claims are for: (1) an accounting; (2) turnover of property; (3) unjust enrichment; and

---

[1] Copies of the Complaints are attached to the Declaration of Claire L. Huene ("Huene Decl."), dated December 9, 2011.

(4) conversion (asserted against all Law Firm Defendants other than Dechert and DLA Piper).

The sections of the Bankruptcy Code on which DSI relies in support of its accounting and

turnover claims do not apply, and the accounting claims also fail because there is no fiduciary

relationship between the Law Firm Defendants and Coudert.  The unjust enrichment claims fail

because the Law Firm Defendants did not benefit at Coudert's expense, and there is no equitable

basis for the disgorgement of profits that DSI seeks.  The claim for conversion fails both because

of the absence of an identifiable sum of money and because Coudert has no possessory interest in

such funds.   Finally, some of the Former Coudert Partners withdrew from Coudert months, and

in some cases *years*, prior to Coudert's dissolution in August 2005.  Even assuming, *arguendo*,

that dissolution did somehow give Coudert greater property rights and interests than it has

otherwise, it cannot assert such claims where the Former Coudert Partners withdrew prior to

Coudert's dissolution.  *See* Point III.

      For all these reasons, the Law Firm Defendants are entitled to summary judgment.

## STATEMENT OF FACTS

### A.    Coudert's Dissolution and Bankruptcy

      Coudert was a law firm organized under New York law, headquartered in New

York and governed by a partnership agreement (the "Partnership Agreement") that specifies it is

governed by New York law.  Huene Decl. Ex. N at Art. 14(e), Ex. H ¶ 17.

      On August 16, 2005 (the "Dissolution Date"), the Coudert partners voted to

dissolve the partnership.  *Id.* Ex. A ¶ 16, Ex. O (First Amended Disclosure Statement Relating to

First Amended Plan of Liquidation of Coudert Brothers LLP, dated May 9, 2008 (the "Coudert

Disclosure Statement")) at 16.  The Coudert partners also appointed a Special Situations

Committee (the "Coudert Special Situations Committee") to wind-down the firm's business.  *See*

*id.* Ex. O at 16.  With respect to pending "Coudert client matters," the objective of the Coudert

Special Situations Committee was to ensure "that all work on Coudert client matters continued uninterrupted during the transition of such matters to other firms." *Id.*

On September 22, 2006, Coudert filed for bankruptcy protection under title 11 of the United States Code (the "Bankruptcy Code"). *Id.* Ex. A ¶ 2. DSI, as Coudert's Plan Administrator, filed its actions against the Law Firm Defendants other than Dechert and DLA Piper in September 2008, and filed its actions against Dechert and DLA Piper in April 2009.

**B.       The Profits Claims**

The Complaints are uniformly vague and merely allege that one or more Former Coudert Partners joined the Law Firm Defendants, that "certain unfinished business of [Coudert] was transferred to" the Law Firm Defendants, and that the Law Firm Defendants have "collected revenues . . . relating to the unfinished business of [Coudert]." *Id.* Ex. A ¶¶ 20-21, 26-27, 31-32, 38-39. These are the only factual allegations in the Complaints. Other than the foregoing, the Complaints contain only unsupported legal conclusions, such as that pursuant to NYPL §§ 40 and 43, "the profits from this revenue are held in trust for [Coudert] and are to be paid over to [DSI] for the benefit of the estate," or that the profits "are property of [Coudert's] bankruptcy estate." *Id.* Ex. A ¶¶ 21, 27-28; *see also id.* Exs. B-M.

Despite the vagueness of the Complaints, it is clear that DSI seeks profits on services performed on the Matters *by the Law Firm Defendants*, not by Coudert. For example, DSI alleges that the "amount of profits is unknown to [DSI] and cannot be ascertained without an accounting of profits from the [Law Firm Defendants]." *Id.* Ex. A ¶ 22; *see also id.* Exs. B-M. DSI does not allege that any of the "unfinished business" consists of contingency fee representations, nor that any Law Firm Defendant received payment for services rendered by Coudert on the Matters.

In fact, each of the Law Firm Defendants billed the Clients only for services they performed on the Matters after the Clients retained them.  The Law Firm Defendants billed the Matters on an hourly-rate basis, not on a contingency fee basis.  *See* Law Firm Defendants' respective Statements of Material Facts pursuant to Local Civil Rule 56.1 (collectively, the "Local Rule 56.1 Statements").

In part, the Profits Claims relate to Former Coudert Partners who withdrew from Coudert months, and in some cases years, prior to the Dissolution Date.  *See* Local Rule 56.1 Statements of K&L Gates, Duane Morris, Sheppard Mullin, and Morrison & Foerster.  The remainder of the Profits Claims relate to Former Coudert Partners who withdrew after the Dissolution Date.

## C.  Status of the Actions

The actions are still in the preliminary discovery stage.  The parties have not exchanged Rule 26 disclosures nor produced documents (other than some informal exchange of documents for the purpose of settlement negotiations).  No depositions have been taken.  The Law Firm Defendants move for summary judgment as a matter of law pursuant to the Court's decision, dated November 2, 2011, withdrawing the reference of these adversary proceedings from the Bankruptcy Court.[2]

## D.  The Law Firm Defendants' Motions for Summary Judgment

DSI asserts only Profits Claims against all Law Firm Defendants other than Dechert.  Therefore, all Law Firm Defendants other than Dechert move for summary judgment dismissing the Complaints against them in their entirety.

---

[2] In the event that the Court denies these pre-discovery motions for summary judgment, the Law Firm Defendants respectfully request that they be permitted to seek summary judgment again at the close of discovery.  The Law Firm Defendants preserve and do not waive any rights, defenses and arguments.

In its Complaint against Dechert, in addition to the Profits Claims, DSI asserts unrelated claims arising out of Dechert's purchase of certain Coudert assets and liabilities in France.  *See* Huene Decl. Ex. C, ¶¶ 25-42.  Dechert moves for summary judgment with respect to all the Profits Claims against it, which are the Fourth, Fifth and Sixth claims in the Complaint.

## ARGUMENT

Summary judgment is appropriate "where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)).  "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003) (internal quotation marks omitted).  Moreover, "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'"  *Id.* (quoting *Anderson v. Liberty Lobby*, 277 U.S. 242, 247-48 (1986)).

## I.

## COUDERT HAS NO PROPERTY INTEREST IN CLIENTS OR UNFINISHED LEGAL REPRESENTATIONS

According to DSI, the Matters are Coudert's property, and Coudert is entitled to all profits thereon, even after the Clients retained the Law Firm Defendants to represent them with respect to the Matters.  DSI is wrong.

Under New York law, a client has an absolute right to terminate a pending representation, whether billed on a contingency or hourly basis, with or without cause.  With respect to unfinished representations, the only cognizable interest a discharged law firm has is to

be paid for the services it rendered prior to termination of the attorney-client relationship.  As the

New York Court of Appeals has repeatedly held:

> The unique relationship between an attorney and client, founded in
> principle upon the elements of trust and confidence on the part of
> the client and of undivided loyalty and devotion on the part of the
> attorney, remains one of the most sensitive and confidential
> relationships in our society. . . . This philosophy engendered the
> development of the rule, now well rooted in our jurisprudence, that
> a client may at anytime, with or without cause, discharge an
> attorney . . . . it follows as a corollary that the client cannot be
> compelled to pay damages for exercising a right which is an
> implied condition of the contract, and the attorney discharged
> without cause is limited to recovering in *quantum meruit* the
> reasonable value of services rendered.

*Demov, Morris, Levin & Shein v. Glazer*, 53 N.Y.2d 553, 556-57 (1981); *see also In re*

*Cooperman*, 83 N.Y.2d 465, 472-73 (1994); *Campagnola v. Mulholland, Minion & Roe*, 76

N.Y.2d 38, 43-44 (1990) (holding that it is well-established that a client has an "absolute right"

to terminate; if the termination is without cause, the attorney is limited to *quantum meruit*

recovery); 22 N.Y.C.R.R. § 1210.1 (requiring every attorney to inform clients of their right to

terminate the "attorney-client relationship at any time," and that in the event of termination, the

attorney may have a claim for "the value of services rendered . . . *up to the point of discharge*"

(emphasis added)).

      While application of these principles differs with respect to unfinished hourly-rate

matters and unfinished contingency fee matters, in both situations it is clear that the discharged

law firm's interest is limited to being compensated for the services it performed prior to the

termination.  Here, contrary to these principles, DSI seeks profits from services performed by the

Law Firm Defendants post-termination.

      With respect to a client's termination of the attorney-client relationship in an

unfinished hourly-rate representation (as the Matters are here), the value of the firm's pre-

termination services is measured pursuant to the firm's contract with the client as to the

applicable hourly-rates.  *See Salans Hertzfeld Heilbronn Christy & Viener v. Between the Bread

East, Inc.*, 290 A.D.2d 381, 381 (1st Dep't 2002).

   When a client terminates an attorney-client relationship in an unfinished

contingency fee representation, the situation is different, because the discharged law firm's

agreed-upon compensation is contingent upon the ultimate result achieved in the case.  The law

firm has two options with respect to how its pre-termination services are to be valued: it may

elect to (a) pursue the client immediately for *quantum meruit* recovery, or (b) wait and receive a

percentage of any contingency fee ultimately received by the client's new law firm, based on the

discharged law firm's "proportionate share of the work performed on the whole case."  *Cohen v.

Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993).  Either way, the discharged law firm is

only entitled to the value of its pre-termination services and has no right to share in the value of

the work performed by the new law firm.

   A discharged law firm has no greater rights when a client terminates the

relationship due to partners leaving that firm to join other firms.  The former partners have the

right to continue to represent their former clients at their new firms.  Rule 5.6 of the New York

Rules of Professional Conduct ("Professional Rules") forbids any agreement that "restricts the

right of a lawyer to practice after termination of the relationship, except an agreement concerning

benefits upon retirement."  This Rule prohibits enforcement of non-competition or other

agreements that could discourage departing attorneys from continuing to represent clients of their

former firm.  *See Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 100 (1989); *Nixon Peabody LLP v.

de Senilhes*, No. 10374/2008, 2008 N.Y. Misc. LEXIS 5770, 2008 N.Y. slip op. 51885U (Sup.

Ct. Monroe County Sept. 16, 2008), at *7 ("The rationale for the rule is to protect the autonomy

of lawyers and the ability of clients to freely choose counsel." (internal quotation marks omitted)); *Graubard Mollen Horowitz Pomeranz & Shapiro v. Moskovitz*, 149 Misc. 2d 481, 485 (Sup. Ct. N.Y. County 1990) ("Restrictive covenants are limited in the case of attorneys in order to serve the greater social purpose of providing clients with full and free choice of counsel."). Clearly, under New York law, "[c]lients are not merchandise." *Burke v. Clifton, Budd & DeMaria*, Index No. 1454/91-002, at *3 (Sup. Ct. N.Y. County Dec. 9, 1991) ("Burke I") (Huene Decl. Ex. Q)[3] (citing *Cohen v. Lord, Day & Lord*, 75 A.D.2d 817 (2d Dep't 1980)).

Thus, under New York law, when a partner withdraws from a law partnership to join or form a new law firm, an existing client may elect to retain the partner's new law firm to complete unfinished legal matters, and the prior law firm has no claim to anything other than the value of the services it actually rendered prior to termination. This is so because unlike partnerships engaged in other businesses, a law firm partnership operates within the bounds of well-established laws and public policies that prohibit a law firm from treating its clients, attorneys, and unfinished legal matters as property or seeking to reduce competition.

The Profits Claims violate these well-established principles of New York law and policy. Coudert's only cognizable interest is to be compensated for the value of its pre-termination services. DSI does not allege that Coudert failed to receive any compensation for its pre-termination services, but even if DSI could so allege, Coudert's claims would lie against the Clients, not against the Law Firm Defendants. *See Steinberg v. Schnapp*, 73 A.D.3d 171, 175 (1st Dep't 2010) (discharged law firm's claim for pre-termination compensation lies against the client, not against the law firm that went on to represent the client). All of the Law Firm Defendants only billed for their own services on the Matters, and they did so on an hourly-rate

---

[3] Copies of all unpublished decisions cited herein are attached as exhibits to the Huene Decl.

basis.  *See* Local Rule 56.1 Statements.  They did not receive any compensation for services performed by Coudert.

In addition, by asserting the Profits Claims, DSI seeks to improperly restrict the Former Coudert Partners' right to practice law.  It is undisputed that had the Clients moved the Matters to law firms that had no former Coudert partners, DSI would have no claims against such law firms for their profits on such matters.  DSI's theory is that the Law Firm Defendants must forfeit profits because the Former Coudert Partners joined them and such former partners may not continue to work on the Matters without doing so for Coudert.  Even if such a theory were cognizable (it is not), it is void as against public policy.  It would discourage law firms from hiring partners of dissolved firms and burden the ability of partners to continue their careers.  It would also impair the rights of clients to continue to work with the attorneys of their choice.  Clients of a dissolved firm might not find a firm willing to accept a representation requiring forfeiture of profits.  In that situation, the clients would have to find new counsel unfamiliar with their pending matters.

Because the Profits Claims violate New York law and policy, they fail as a matter of law and the Law Firm Defendants are entitled to summary judgment.

## II.

### DISSOLUTION DOES NOT CREATE RIGHTS THAT OTHERWISE DO NOT EXIST

DSI incorrectly argues that upon dissolution, Coudert obtained property rights that it would not otherwise have, and that former partners owe duties to the firm that they would not have had if they withdrew under other circumstances.  *Cf. Butner v. United States*, 440 U.S. 48, 55 (1979) (holding there is "no reason" why property interests "should be analyzed differently" because a party is in bankruptcy; to do so would create "a windfall merely by reason

10

of the happenstance of bankruptcy" (internal quotation marks omitted)), *superseded by statute on other grounds*, Pub. L. 103-394 (1994); *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993) ("The estate in bankruptcy only includes property to which the debtor would have had a right if the debtor were solvent"); *In re Suter*, 181 B.R. 116, 119 (Bankr. N.D. Ala. 1994) ("Bankruptcy does not create interests in property that did not exist otherwise.").

Indeed, New York decisions addressing the dissolution of a law firm make it clear that the dissolved firm has no greater rights than it would under any other circumstance: it only has a right to compensation for the services it rendered *pre-dissolution*.  *See* Point II(A)*, infra.*

Importantly, the statutes on which DSI relies in support of its theory that dissolution creates property or rights, NYPL §§ 40 and 43, are *not* dissolution statutes.  On their face, they create no rights in dissolution that a dissolved law firm did not otherwise have.  *See* Point II(B), *infra.*

Finally, the handful of non-New York decisions on which DSI relies are inapposite, contrary to New York law and policy, and are in any event wrongly decided.  *See* Point II(C), *infra*.

**A.  Coudert Has No Cognizable Interest in the
Law Firm Defendants' Post-Dissolution Profits on the Matters**

Under New York law, a dissolved law firm has the same interest in unfinished legal representations as it would have under any other circumstance: it is only entitled to compensation for the value of its own services, not to a share of the work performed by other law firms subsequently retained by the clients, regardless of whether former partners of the dissolved law firm joined the subsequent firm.

In *Mandel v. Grunfeld*, No. 3144/85, at *157 (Sup. Ct. N.Y. County Mar. 31, 1987) (Huene Decl. Ex. S), a law firm dissolved and former partners of the dissolved firm

formed a new firm.  Clients of the old firm retained the former partners' new firm with respect to

unfinished contingency matters.  *Id.* at 161.   The court held that the "dissolution of a partnership

is analogous to the discharge of an attorney by a client without cause."  *Id.*  Thus, a client's

retention of a new law firm as a result of the prior law firm's dissolution is no different from

discharge by a client for any other reason.  The *Mandel* court then applied the "rule . . . that the

discharged attorney is entitled to recover on a *quantum meruit* theory the reasonable value of the

services he has rendered."  *Id.*  This is the same rule that would apply outside of dissolution.  *See*

Point I, *supra*.  The First Department affirmed without opinion.  *Mandel v. Grunfeld*, 138 A.D.2d

982, 982 (1st Dep't 1988); *see also Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 298 (2d

Cir. 2000) (under New York law, a dissolved law firm has "no cognizable property interest" in

the post-dissolution work of its former partner in an unfinished contingency fee case); *Shandell*

*v. Katz*, 217 A.D.2d 472, 473 (1st Dep't 1995); *Kirsch v. Leventhal*, 181 A.D.2d 222, 226 (3d

Dep't 1992)  (post-dissolution services of former partners on legal representations pending at the

time of dissolution could not be considered "use" of the "property of the dissolved partnership"

under NYPL § 73 (internal quotation marks omitted)).[4]

The only two New York decisions to address claims for post-dissolution profits

on unfinished *hourly-rate* representations have soundly rejected such claims.  In *Burke*, a partner

left a law firm to create a new law firm, and then sued his former partnership for dissolution and

for an accounting.  *Burke I* at 1.  The former partnership counterclaimed, alleging that the former

partner had taken clients from the former firm and seeking a constructive trust on "all profits

---

[4] Although the *Kirsch* and *Shandell* decisions use the terminology of NYPL § 73, they hold that a
dissolved law firm's interest in an unfinished contingency fee case is limited to the right to
compensation for its pre-dissolution services thereon, and that it does not have a property interest
in the unfinished case itself.  If the unfinished case itself were the dissolved law firm's "asset" or
the "property," a withdrawing partner would have the right to share in the entire contingency fee
ultimately obtained, contrary to *Kirsch* and *Shandell.*

received" by its former partner from such clients. *Id.* The Court dismissed the former partnership's counterclaims, holding that it had no proprietary interest in clients, and noting that it did not allege that the partner "removed any pending actions." *Id.* at 3.

The former partnership thereafter amended its counterclaims to allege that "pending cases" had in fact been transferred to the new firm and to add claims for unjust enrichment. *Burke v. Clifton, Budd & DeMaria*, Index No. 1454/91-003, at *2 (Sup. Ct. N.Y. County July 27, 1992) ("*Burke II*") (Huene Decl. Ex. R). However, none of the pending cases were "alleged to be contingent fee cases." *Id.* at *3. The former partner and his new partnership moved to dismiss a second time, arguing that there was no unjust enrichment because the former partnership "was compensated for all work it performed on these files up until the transfer." *Id.* at *2. The Court agreed, and dismissed the former partnership's amended counterclaims. *Id.* at *3. The Court distinguished cases involving pending contingency fee cases, because in such cases, the "entire fee" may be received by the new firm, with the result that the dissolved firm would not have been compensated for services it performed. *Id.* The Court held that the dissolved law firm only had a cognizable claim if it "rendered services for which [it] was not compensated," and allowed the dissolved law firm to serve a "further amended complaint setting forth a cause of action for compensation for services actually rendered on specified cases, with sufficient particularity to define the subject matter and the triable issues," if it could do so. *Id.*

Likewise, in the recent case of *Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP*, Index No. 150178/2010, at *11-12 (Sup. Ct. N.Y. County Sept. 13, 2011) (Huene Decl. Ex. R), the Court again dismissed claims for post-dissolution profits on unfinished hourly-rate matters. The Court noted that the "New York decisions dealing with a cause of action for unfinished business have uniformly involved contingency fee cases" and that it "is logical to

13

distinguish between contingency fee arrangements and cases which are billed on the basis of hourly work." *Id.* at \*11.  The Court also noted that allowing a dissolved law firm to obtain profits for another firm's services would violate Professional Rule 1.5(g), New York's rule on division of legal fees. *Id.* at \*11-12.

In addition, a dissolved law firm remains subject to Professional Rule 5.6 and may not prevent or discourage its former partners from continuing to represent clients on unfinished matters. *See Silverberg v. Schwartz*, 81 A.D.2d 640, 641 (2d Dep't 1981) ("After dissolution, each former partner is free to practice law individually, and has the right to accept retainers from persons who had been clients of the firm"); *Mandel*, No. 3144/85, at \*158-59 (rejecting dissolved law firm's claims against former partners under the partnership agreement where enforcement "would, in reality, financially prevent [the former partners] from practicing law for former clients of [the dissolved firm], and would restrict the right of such clients to hire the [former partners] to represent them"); *Vollgraff v. Block*, 117 Misc.2d 489, 493 (Sup. Ct. Suffolk County 1982) ("There was nothing to prevent one of the partners from representing plaintiffs after partnership dissolution.").

All these decisions hold that dissolution does not create rights that a law firm would not otherwise have.  After discharge by a client, whether due to the dissolution of the firm or for any other reason, the former law firm only has a claim for compensation for *its own services*.  Because the Profits Claims seek profits for the Law Firm Defendants' services on the Matters, they fail as a matter of law and the Law Firm Defendants are entitled to summary judgment.

B.      **NYPL §§ 40 and 43 Do Not Give Coudert Greater Rights in Dissolution**

In the Complaints, DSI cites two New York statutes: NYPL §§ 40 and 43.  Huene Decl. Exs. A-M.  Neither statute grants the partnership special rights in dissolution or gives the dissolved law firm any greater property rights than it would otherwise have.

NYPL § 40 provides, in relevant part:

> The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules: . . . (6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.

On its face, this statute is not limited to the dissolution context.  It does not define "partnership business."  The plain meaning of "partnership business" is that it refers to work that the partnership has actually been engaged to do.  When the Clients terminated their engagement of Coudert, the Matters ceased to be Coudert partnership business, and became the Law Firm Defendants' partnership business.  That is clearly the result outside of the dissolution context (*see* Point I, *supra*), and NYPL § 40(6) does not provide that "partnership business" means something different in the dissolution context than it means otherwise.

NYPL § 43 provides, in relevant part:

> (1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

This statute is also not limited to dissolution.  It does not provide that upon dissolution, something becomes "property" of the dissolved law firm that is not otherwise property of the firm.  The Matters are not, and never were, "property" of Coudert.  Nor do the

Matters continue to be a transaction "connected with" the "liquidation" of Coudert.  Because the Matters were not property of Coudert, completing them is not "liquidation" of Coudert.

Even if the Matters were Coudert "property," which they clearly are not, DSI does not allege that any "use" of such "property" was "without the consent" of the other Coudert partners.  NYPL § 43(1).  The express goal of the Coudert Special Situations Committee's wind-down was to "transition" unfinished Coudert matters "to other firms."  Huene Decl. Ex. O.

Moreover, neither of the cited statutes allows DSI to assert any claims against the Law Firm Defendants.  They speak only to the duties of *partners*, and confer no rights against third-parties such as the Law Firm Defendants.

**C.    DSI's Reliance on Non-New York Authorities Is Misplaced**

DSI relies on cases following a California intermediate appellate decision, *Jewel v. Boxer*, 156 Cal. App. 3d 171 (Cal. Ct. App. 1986).  The *Jewel* Court focused on the provision in the Uniform Partnership Act ("UPA") that is equivalent to NYPL § 40(6), which the Court interpreted as providing that "[n]o partner (except a surviving partner) is entitled to extra compensation for services rendered in completing unfinished business."  *Id.* at 176.  On its face, the statute does not so state.  The statute states that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."  NYPL § 40(6).  The *Jewel* Court presupposed, without authority, that unfinished client matters remain the "business" of the dissolved law firm even after a client retains a new law firm, and that the former partner, now a partner of the new firm, is merely winding-down the dissolved firm by continuing to perform services for the client post-dissolution.  These assumptions are contrary to the plain meaning of the statute, and to New York law and policy.

16

The *Jewel* Court was apparently troubled by the fact that the new firm in that case consisted "of two former partners of the dissolved firm that previously handled the client's case." *Id.* at 178. The Court held that this did not "transform the case" into business of the new law firm. *Id.* Effectively, the *Jewel* Court held that former partners could not withdraw to compete with their prior firm, and that in such circumstances, the unfinished matters remained the "business" of the dissolved law firm.

This is not the situation here, and in any event California law does not apply to Coudert. Notably, California, unlike New York, *allows* law firms to restrict competition by former attorneys. *Howard v. Babcock*, 863 P.2d 150, 156 (Cal. 1993). The California Supreme Court recognized that if law firms were not allowed to restrict competition (as is the case under New York law and policy), the rule enunciated in *Jewel* would be invalid. *Id.* at 159 n. 8 (noting that the rule in *Jewel* "may be just as much a disincentive on the withdrawing partner to continue to represent clients of the firm as an anticompetitive penalty").

The non-New York cases following *Jewel* merely parrot *Jewel's* assumption that even if partners withdraw from the dissolved firm and clients retain the former partners' new law firms, that such former partners' post-dissolution services are somehow part of completion of the *dissolved* firm's "business," on the grounds that competition is prohibited among lawyers. *See, e.g.*, *Marr v. Langhoff*, 589 A.2d 470, 476 (Md. 1991) (citing California treatises); *Sufrin v. Hosier*, 896 F. Supp. 766, 768 (N.D. Ill. 1995) (noting that *Jewel* "was not based solely on partnership law but also cited 'sound policy reasons' for its decision," specifically to "prevent[] partners from competing" for cases); *Sullivan, Bodney & Hammond v. Sullivan*, 820 P.2d 1248, 1250 (Kan. 1991) (the *Jewel* Court "also enunciated valid policy reasons justifying the decision,"

because the rule "negates any incentive to compete for the big cases while the partnership is a going concern so as to retain these cases in the event of dissolution.").

Moreover, *Jewel* itself and the majority of cases that follow it involve unfinished *contingency fee* representations. These decisions do not address the application of the rationale to unfinished hourly-rate cases. *See Sufrin*, 896 F. Supp. at 767 (issue is "[w]ho is entitled to what amount of the contingent fees"); *Sullivan*, 820 P.2d at 1249 (disposition of "contingent fees"); *Marr*, 589 A.2d at 472 (not an unfinished business doctrine case, and involving a "contingent fee arrangement"); *Frates v. Nichols*, 167 So. 2d 77, 79, 82 (Fla. Dist. Ct. App. 1964) (concerning ten "negligence cases," eight of which "resulted in fees," indicating they were contingency-fee cases, and involving the economics of a law firm "where almost all of the fees are contingent"); *Vowell & Meelheim, P.C. v. Beddow, Erben & Bowen, P.A.*, 679 So. 2d 637, 638 (Ala. 1996) (dispute "regarding the division of the legal fees received in four contingency fee cases"). Indeed, in *Vowell*, the Supreme Court of Alabama noted that *Jewel* "rests on the principle that pending *contingent-fee cases are assets of the originating firm*." *Id.* at 640 (emphasis added).

The *Jewel* rationale has been aggressively misapplied by certain Bankruptcy Courts. *See, e.g.*, *Labrum & Doak, LLP v. Ashdale*, 227 B.R. 391, 395 (Bankr. E.D. Pa. 1998) (Pennsylvania law); *Brobeck, Phleger & Harrison LLP v. Greenspan*, 408 B.R. 318, 325 n.2 (Bankr. N.D. Cal. 2009) (California law). These decisions hold that unfinished *hourly-rate* cases are "assets" of the dissolved firm. No District Court or Court of Appeals has yet reviewed these decisions. These bankruptcy decisions are entitled to no deference, *see Stern v. Marshall*, --- U.S. ----, 131 S. Ct. 2594, 2620 (2011), do not apply New York law, and in any event merely repeat *Jewel's* improper assumptions.

In opposition to the Law Firm Defendants' motions to dismiss, DSI argued that because the non-New York *Jewel* cases interpret the UPA, which is also the basis for the NYPL, New York courts would follow them.  However, the New York decisions following *Jewel* have inserted a requirement not present in any of the non-New York decisions that merely followed *Jewel* wholesale.  The New York decisions, although they attempt to conform to *Jewel*, consistently limit the dissolved law firm's interest to the value of its *pre-dissolution* services.  Thus, while *Kirsch* cites *Jewel* and recites that a "partner in possession of the partnership business after dissolution" has a fiduciary duty to "wind up the partnership's affairs and complete performance of any partnership service contracts for the benefit of all partners," it ultimately holds that the former partners' "postdissolution efforts, skill and diligence" on the unfinished matter is *not* "attributable to the use of . . . property of the dissolved partnership." *Kirsch*, 181 A.D.2d at 226 (internal quotation marks omitted).  Thus, DSI's claim that New York courts would apply the same rationale as the non-New York decisions is contradicted by New York courts themselves.

The central fallacy of the *Jewel* rationale is that it creates rights in dissolution that do not otherwise exist and is based on a policy of restricting lawyer competition.  Of course, when a partnership dissolves, the partners owe duties to wind-down and liquidate the partnership assets and remaining partnership business.  Partners may not personally profit from the partnership's assets or business in dissolution anymore than they can at any other time.  NYPL § 43(1).  However, dissolution does not *create* partnership assets or partnership business that does not otherwise exist.  Unfinished legal matters are *not* partnership assets, as a matter of law.  Nor do unfinished legal matters remain the "business" of the dissolved law firm after clients retain a new law firm.  Notably, both NYPL §§ 40(6) and 43(1) apply generally, whether or not a law

firm is in dissolution, and neither suggests that dissolution changes what constitutes partnership

"property" or "business."

By contrast, the New York approach to law firm dissolution is consistent with a

law firm's rights in any other context.  The only right a law firm has is to be compensated for the

services it actually performed prior to termination or, in the dissolution context, prior to

dissolution, as New York cases uniformly hold.  The New York approach also gives effect to

New York's strong policy in favor of clients' absolute right to counsel of their choosing and the

freedom of former partners to perform services for such clients without penalty.

### III.

### DSI'S PROFITS CLAIMS FAIL FOR ADDITIONAL REASONS

#### A.        The Accounting and Turnover Claims

DSI's accounting and turnover claims are based on NYPL §§ 40 and 43 and 11

U.S.C. § 542.  *See* Huene Decl. Exs. A-M.  These claims fail as a matter of law.

DSI has no right to an "accounting" by the Law Firm Defendants.  NYPL §§ 40

and 43 pertain to the relationship of partners to a partnership.  They do not confer on Coudert

any right to seek an accounting from any third-party, including the Law Firm Defendants.

Moreover, even if Coudert were asserting its accounting claims against the Former Coudert

Partners, such claims would fail, because after the Clients retained the Law Firm Defendants, the

Matters were not Coudert "business."  In addition, the Matters are not now, and never were,

Coudert "property."  *See* Points I and II, *supra*.

Nor does 11 U.S.C. § 542 require the Law Firm Defendants to account to

Coudert.  Section 542(e) provides that a court may order "an attorney, accountant, or other

person that holds recorded information, including books, documents, records, and papers,

relating to the debtor's property or financial affairs, to turn over or disclose such recorded

information to the trustee." 11 U.S.C. § 542(e).  This provision applies to a debtor's own attorney, accountant or similar professional – it does not afford a debtor *carte blanche* to look at other parties' books and records.  *See*, *e.g.*, *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 471 (Bankr. S.D.N.Y. 2006).  In addition, as demonstrated above, the Law Firm Defendants do not have information about the "property" or "financial affairs" of Coudert.  *See* Points I and II, *supra*.

In addition, turnover actions under Section 542 are only appropriate when there is no legitimate dispute over the ownership of the property or debt.  *See*, *e.g.*, *Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 32 (S.D.N.Y. 1996) ("The word 'turnover,' however, implies action far more ministerial than is required in these circumstances: [defendant's] action to determine the amount of a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be styled an action to 'turn over' estate 'property.'"); *Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) (Sotomayor, J.) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." (internal quotation marks omitted)); *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (holding that Section 542 was inapplicable because "§ 542(b) cannot be used to recover a disputed pre-petition debt").  Here, Coudert's entitlement to the Law Firm Defendants' post-dissolution profits on the Matters are disputed.  *See* Points I and II, *supra*.

## B.    The Unjust Enrichment Claims

To state a cause of action for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011) (internal quotation marks omitted). Generally, "courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law . . . , and whether the defendant's conduct was tortious or fraudulent." *Paramount Film Distrib. Corp. v. New York*, 30 N.Y.2d 415, 421 (1972).

DSI's claims for unjust enrichment fail because Coudert has no right to the Law Firm Defendants' profits on the Matters. *See* Points I and II, *supra*. Therefore, the Law Firm Defendants could not have been "enriched" at Coudert's "expense"; they were merely compensated for legal services they rendered for the Clients.

Furthermore, under New York law "an unjust enrichment claim . . . requires some type of direct dealing or actual, substantive relationship with a defendant." *Redtail Leasing v. Bellezza*, No. 95 Civ. 5191 (JFK), 1997 U.S. Dist. LEXIS 14821, at *22 (S.D.N.Y. Sept. 29, 1997); *accord State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 304 (1st Dep't 2007). DSI does not, and cannot, allege a direct relationship between Coudert and the Law Firm Defendants, which were competitors, and any relationship is too attenuated to support a claim for unjust enrichment.

Finally, there is no equitable basis to require the Law Firm Defendants to "make restitution." The Law Firm Defendants have done nothing wrong. They have done nothing other than allow the Former Coudert Partners to join them, and agree to represent the Clients in the Matters. They are entitled to compensation for their services on the Matters. DSI does not allege any wrongdoing or tortious conduct by the Law Firm Defendants of any kind. DSI merely alleges, without basis, that Coudert is entitled to the Law Firm Defendants' "profits" on the Matters.

Indeed, by asserting the Profits Claims, DSI seeks to *cause*, not remedy, a patently inequitable result.  If DSI were to prevail, the Law Firm Defendants would have dedicated their resources, including the time of their employees and attorneys, to perform services for the Clients on the Matters solely for the benefit of Coudert's creditors.  No New York case or statute supports this result.

## C.     The Conversion Claims

Under New York, a claim for conversion requires "(1) plaintiff's possessory right or interest in the property, and (2) defendant's dominion over the property or interference with it, in derogation of the plaintiff's rights."  *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006) (citations omitted).  As demonstrated above, Coudert does not have a possessory interest in the Law Firm Defendants' profits on their services in the Matters.  *See* Points I and II, *supra*.

Moreover, where, as here, the subject of a plaintiff's conversion claim is money, the plaintiff must specifically identify the amount of money to be returned and the obligation under which the defendant must return it to the plaintiff.  *See*, *e.g.*, *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (citing *Mfrs. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 124 (1st Dep't 1990)).  Failure to allege the existence of a specifically identifiable sum of money is fatal to an action for conversion of money.  *See, e.g., Berry v. Deutsche Bank Trust Co. Ams.*, No. 07 Civ. 7634 (WHP), 2008 U.S. Dist. LEXIS 76104, at *24-25 (S.D.N.Y. Sept. 30, 2008) ("[T]he money must be part of a separate, identifiable, segregated fund in order to bring an action for conversion." (internal quotation marks omitted)), *aff'd*, 378 Fed. App'x 110 (2d Cir. 2010); *Daub v Future Tech Enter., Inc.*, 65 A.D.3d 1004, 1006 (2d Dep't 2009).

DSI does not allege that it is entitled to any specifically identifiable sum of money.  It merely alleges that Coudert is entitled to the Law Firm Defendants' unspecified

"profits" on the Matters.  Huene Decl. Exs. A-M.  This is not sufficient to state a claim for conversion.  *See Rogath v. Koegel*, No. 96 Civ. 8729, 1998 U.S. Dist. LEXIS 15624, at *8 (S.D.N.Y. Oct. 2, 1998) (a conversion action "does not lie to enforce a mere obligation to pay money" (internal quotation marks omitted)).

### D.     Former Coudert Partners Who Withdrew from Coudert Prior to the Dissolution Date

According to DSI, Coudert's dissolution is the event that allows Coudert to assert property interests in unfinished legal representations that it would not otherwise have.  Under this theory, any unfinished representations at the time of dissolution permanently belong to Coudert, such that all subsequent work performed by other law firms is merely part of winding up Coudert's "business."  As demonstrated above, such a theory is soundly refuted by New York law and policy.  *See* Point I, *supra*.  However, even under DSI's theory of the law, DSI has no claims against Former Coudert Partners who withdrew from Coudert *prior* to the Dissolution Date.  *See, e.g.*, *Jewel*, 156 Cal. App. 3d at 174 ("[A]ttorneys' fees received on *cases in progress upon dissolution* of a law partnership are to be shared by the former partners according to their right to fees in the former partnership." (emphasis added)); NYPL § 61 (imposing winding up obligations on former partners only "on dissolution").

DSI has admitted as such.  At a Bankruptcy Court hearing held April 3, 2009, DSI dismissed Profits Claims against law firms that "did not take any partners from Coudert post-August 16, 2005."  Huene Decl. Ex. P at 7.  Accordingly, the Court should grant summary judgment on all Profits Claims based on Former Coudert Partners who withdrew from Coudert prior to the Dissolution Date.

## CONCLUSION

Because the Profits Claims fail as a matter of law, the Law Firm Defendants are

entitled to summary judgment.

Dated: New York, New York
       December 9, 2011

                        MILLER & WRUBEL P.C.

                        By: /s/ Claire L. Huene
                             Joel M. Miller
                             Claire L. Huene
                             570 Lexington Avenue
                             New York, New York 10022
                             Tel:  (212) 336-3500
                             Fax:  (212) 336-3555

                             *Attorneys for Defendant*
                             *Dechert LLP*

                        MORRISON & FOERSTER LLP

                        By: /s/  Brett H. Miller
                             Brett H. Miller
                             Erica J. Richards
                             1290 Avenue of the Americas
                             New York, New York 10104
                             Tel:  (212) 468-8000
                             Fax:  (212) 468-7900

                             *Attorneys for Defendant*
                             *Morrison & Foerster LLP*

QUINN EMANUEL URQUHART &
SULLIVAN LLP

By:  /s/  Susheel Kirpalani
     Eric J. Emanuel
     Susheel Kirpalani
     Eric M. Kay
     51 Madison Avenue, 22nd Floor
     New York, New York 10010
     Tel: (212) 849-7000
     Fax: (212) 849-7100

*Attorneys for Defendant*
*Akin Gump Strauss Hauer &Feld LLP*


DUANE MORRIS LLP
A Delaware Limited Liability Partnership

By:  /s/ Lawrence J. Kotler
     Lawrence J. Kotler
     1540 Broadway
     New York, NY 10036-4086
     Tel:  (212) 692-1000
     Fax:  (212) 692-1020

     Lewis R. Olshin, Esquire
     Lauren Lonergan Taylor, Esquire
     30 South 17th Street
     Philadelphia, PA  19103
     Tel:  (215) 979-1000
     Fax:  (215) 979-1020

*Attorneys for Defendant*
*Duane Morris LLP*

K&L GATES LLP

By:  /s/ Jeffrey N. Rich
       Jeffrey N. Rich
       599 Lexington Avenue
       New York, New York 10022
       Tel:  (212) 536-4097
       Fax:  (212) 536-3091

*Attorneys for Defendant*
*K&L Gates LLP*


KRAMON & GRAHAM, P.A.

By:  /s/  James P. Ulwick
       James P. Ulwick (*admitted pro hac vice*)
       One South Street, Suite 2600
       Baltimore, Maryland 21202
       Tel: (410) 752-6030

          - and -

MEISTER SEELIG & FEIN LLP

       Jeffrey Schreiber
       Howard Davis
       140 East 45th Street, 19th Floor
       New York, New York 10017
       Tel: (212) 655-2500
       Fax: (212) 655-3535

*Attorneys for Defendant*
*DLA Piper (US) LLP*

SHEPPARD MULLIN RICHTER
& HAMPTON LLP

By: /s/ Daniel L. Brown
     Malani J. Cademartori
     Daniel L. Brown
     30 Rockefeller Plaza
     New York, New York 10112
     Tel: (212) 653-8700
     Fax: (212) 653-8701

     D. Ronald Ryland, Cal. Bar No. 49749
        (*admitted pro hac vice*)
     Four Embarcadero Center, 17th Floor
     San Francisco, CA 94111
     Tel: (415) 434-9100
     Fax: (415) 434-3947

     *Attorneys for Defendant*
     *Sheppard Mullin Richter & Hampton LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December 2011, I caused the foregoing

Joint Memorandum of Law in Support of Law Firm Defendants' Motions for Summary

Judgment to be served by ECF and e-mail on counsel for Development Specialists, Inc.

Dated:  New York, New York
        December 9, 2011

                                    /s/ Claire L. Huene
                                        Claire L. Huene