UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| In re: COUDERT BROTHERS LLP, | : | |
| | : | |
| Debtor. | : | |

---

| | | |
|---|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for COUDERT BROTHERS LLP, | : | |
| | : | 11-cv-5994 (CM) |
| Plaintiff, | : | |
| v. | : | |
| AKIN GUMP STRAUSS HAUER & FELD LLP, | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for COUDERT BROTHERS LLP, | : | 11-cv-5973 (CM) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| ARENT FOX LLP, | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for COUDERT BROTHERS LLP, | : | 11-cv-5995 (CM) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| DORSEY & WHITNEY, LLP, | : | |
| | : | |
| Defendant. | : | |

---

DEVELOPMENT SPECIALISTS, INC.,  :
in its capacity as Plan Administrator  :
for COUDERT BROTHERS LLP,  :    11-cv-5969 (CM)
  :
      Plaintiff,  :
v.  :
DUANE MORRIS, LLP,  :
  :
      Defendant.  :
  :

DEVELOPMENT SPECIALISTS, INC.,  :
in its capacity as Plan Administrator  :    11-cv-5974 (CM)
for COUDERT BROTHERS LLP,  :    11-cv-5972 (CM)
  :    11-cv-5968 (CM)
      Plaintiff,  :    11-cv-5970 (CM)
v.  :
JONES DAY,  :
SCOTT JONES,  :
GEOFFROY DE FOESTRAETS, and  :
JINGZHOU TAO,  :
      Defendants.  :

DEVELOPMENT SPECIALISTS, INC.,  :
in its capacity as Plan Administrator  :
for COUDERT BROTHERS LLP,  :    11-cv-5993 (CM)
  :
      Plaintiff,  :
v.  :
KL GATES LLP,  :
  :
      Defendant.  :
  :

DEVELOPMENT SPECIALISTS, INC.,  :
in its capacity as Plan Administrator  :    11-cv-5985 (CM)
for COUDERT BROTHERS LLP,  :
  :
      Plaintiff,  :
v.  :
  :
MORRISON & FOERSTER LLP,  :
  :
      Defendant.  :

| | | |
|---|---|---|
| DEVELOPMENT SPECIALISTS, INC., | : | |
| in its capacity as Plan Administrator | : | |
| for COUDERT BROTHERS LLP, | : | 11-cv-5971 (CM) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| SHEPPARD MULLIN RICHTER & | : | |
| HAMPTON LLP, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| DEVELOPMENT SPECIALISTS, INC., | : | |
| in its capacity as Plan Administrator | : | 11-cv-5983 (CM) |
| for COUDERT BROTHERS LLP, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| DLA PIPER (US) LLP, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| DEVELOPMENT SPECIALISTS, INC., | : | |
| in its capacity as Plan Administrator | : | 11-cv-5984 (CM) |
| for COUDERT BROTHERS LLP, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DECHERT LLP, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW OF PLAINTIFF DEVELOPMENT SPECIALISTS, INC. IN SUPPORT OF CROSS-MOTION SEEKING ENTRY OF AN ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DETERMINING THAT COUDERT HAS A PROPERTY INTEREST IN FEES RECEIVED BY DEFENDANTS POST-DISSOLUTION RELATED TO CLIENT MATTERS THAT WERE <u>PENDING AND UNCOMPLETED AS OF THE DISSOLUTION DATE OF COUDERT</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS .........................................................................3

    A.    Coudert Brothers...................................................................3

    B.    Coudert's Bankruptcy and the Claims Asserted ...................................4

    C.    Non-Disputed Material Facts......................................................5

PROCEDURAL HISTORY.........................................................................6

STANDARD FOR SUMMARY JUDGMENT.........................................................8

ARGUMENT.................................................................................8

I. SUMMARY JUDGMENT ON THE NARROW ISSUE THAT THE UNFINISHED
BUSINESS DOCTRINE APPLIES TO HOURLY CASES IS APPROPRIATE.....................8

    A.    Nature of a Partnership ...........................................................8

    B.    Dissolution of a Partnership and Unfinished Business.......................9

    C.    The "No Compensation" Rule As Applied Under New York Law ..................10

           1. The New York Court Of Appeals Has Ruled That Unfinished Business
           Applies to Professional Service Partnerships .................................11

           2. The No Compensation Rule As Applied to Law Firm Partnerships .............13

    D.    Santalucia v. Seabright Transportation, Inc.....................................16

    E.    The Rule's Rationale Applies Equally to Contingency and Hourly Cases........18

    F.    The "No Compensation" Rule Applied In Other Jurisdictions.........................19

II. THIS CROSS-MOTION SEEKS A LIMITED RULING ....................................24

III. CONCLUSION.............................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...............................................................................................8

*In re Brobeck, Phleger & Harrison LLP*,
408 B.R. 318 (Bankr. N.D. Cal. 2009) ...................................................7, 19, 20

*Celotex v. Catrett*,
477 U.S. 317 (1986)...............................................................................................8

*In re Coudert Brothers LLP Law Firm Adversary Proceedings*,
447 B.R. 706 (S.D.N.Y. 2011)......................................................................... 8, 23

*Denver v. Roane*,
99 U.S. 355 (1878).................................................................................................11

*In re Heller Ehrmann LLP v. Arnold & Porter LLP (In re Heller Ehrmann)*, 2011 WL
1539796 (Bankr. N.D.Cal. 2011)..........................................................................20

*In re LaBrum & Doak LLP*,
227 B.R. 391 (Bank. E.D. Pa. 1998)............................................................ *passim*

*O'Hara v. Weeks Marine, Inc.*,
294 F.3d 55 (2d Cir.2002).......................................................................................8

*Robinson v. Nussbaum*,
11 F.Supp.2d (D.D.C. 1997) .......................................................................... *passim*

*Santalucia v. Sebright Transportation, Inc.*,
232 F.3d 293 (2d Cir. 2000).......................................................................... *passim*

*Scholastic Inc., v. Harris*,
259 F. 3d 73 (2d Cir. 2001).....................................................................................9

*Sufrin v. Hosier*,
896 F.Supp. 766 (N.D. Ill. 1995) ..........................................................................22

*In re Yerulshami*,
393 B.R. 288 (Bankr. E.D.N.Y. 2008)...................................................................10

**STATE CASES**

*Ajettix, Inc. v. Raub,*
    9 Misc.3d 908 (Sup. Ct. 2005) .................................................................10

*Aurnou v. Greenspan,*
    161 A.D.2d 438 (1st Dep't 1990) ......................................................15, 23

*Bader v. Cox,*
    701 S.W.2d 677 (Tex. App. 1985) ....................................................10, 23

*Bayer v. Bayer,*
    215 A.D. 454 (1st Dep't 1926) ..........................................................10, 11

*Beckman v. Farmer,*
    579 A.2d 618 (D.C.Ct. App. 1990) ...................................................19, 20

*Beste v.Burger,*
    17 Abb. N. Cases 162 (Sup. Ct. 1885) ..................................................9

*Dawson v. White & Case,*
    88 N.Y. 2d 666 (1996) .........................................................................10

*DelCasino v. Koeppel,*
    207 A.D.2d 374 (2d Dep't 1994) ......................................................16, 18

*Dwyer v. Nicholson,*
    193 A.D.2d 70 (2d Dep't 1993) ........................................................14, 23

*Dwyer v. Nicholson,*
    89 A.D.2d 597 (2d Dep't 1982) ...........................................................14

*Ederer v. Gursky,*
    9 N.Y. 3d 514 (2007) ...........................................................................8, 24

*Ellerby v. Spiezer,*
    485 N.E.2d 413 (Ill. App. 1985) ........................................................7, 23

*In re Estate of Barbera,*
    55 Ill.2d 235 (Supreme Ct. Ill. 1973) .................................................23

*Frates v. Nichols,*
    167 So.2d 77 (Fla. Dist. Ct. 1964) ...................................................22, 23

*Grant v. Heit,*
    263 A.D.2d 388 (1st Dep't 1999) ........................................................16

*Graubard Mollen Dannett & Horowitz v. Moskovitz,*
    86 N.Y.2d 112 (1995) ...................................................................................8, 9

*Hammes v. Frank,*
    579 N.E.2d 1348 (Ind.Ct.App. 1991) .........................................................19

*Jewel v. Boxer,*
    156 Cal.App.3d 171 (Cal. App. 1984) .........................................................23

*King v. Leighton,*
    100 N.Y. 386 (1885) .......................................................................................9

*Kirsch v. Leventhal,*
    181 A.D.2d 222 (3rd Dep't 1992) ......................................................*passim*

*Marr v. Langhoff,*
    322 Md. 657 (Md. 1991) ...............................................................................22

*Mooney v. Shaw,*
    4 N.Y.S.2d 563 (N.Y. Sup. Ct. 1938) ....................................................13, 14

*Murov v. Ades,*
    12 A.D.3d 654 (2d Dep't 2004) ....................................................................16

*Platt v. Henderson,*
    361 P.2d 73 (Or. 1961) ...........................................................................19, 20

*Resnick v. Kaplan,*
    434 A.2d 582 (Md. 1981) ........................................................................21, 22

*Rhein v. Peeso,*
    194 A.D. 274 (1st Dep't 1920) ...............................................................12, 13

*Rosenfeld v. Cohen,*
    146 Cal.App.3d 200 (Cal. App. 1983) .........................................................23

*Rothman v. Dolin,*
    20 Cal.App.4th 755 (Cal. App. 1993) ....................................................19, 20

*Shandell v. Katz,*
    217 A.D.2d 472 (1st Dep't 1995) .......................................................7, 16, 18

*Sheresky v. Sheresky Aronson Mayefsky & Sloan,*
    LLP, Index No. 150178/2010 ......................................................................23

*Shiboleth v. Yerulshami,*
    58 A.D.3d 407 (1st Dep't 2009) ...................................................................16

*Smith Keller & Assoc. v. Dorr & Assoc.*,
   875 P.2d 1258 (Wyo. 1994) .......................................................................19, 21

*Stem v. Warren*,
   227 N.Y. 538 (1920) ................................................................... *passim*

*Sullivan v. Bodney*,
   820 P.2d 1248 (Kan. Ct. App. 1991) .................................................22

*Vowell v. Beddow*,
   679 So.2d 637 (Ala. 1996) .................................................................22

*Young v. Delaney*,
   647 A.2d 784 (D.C.Ct. App. 1994) ....................................................19

## FEDERAL STATUTES

11 U.S.C. § 542 ...............................................................................................25

28 U.S.C. § 158(d)(2) ........................................................................................7

## STATE STATUTES

New York Partnership Law § 4(4) (McKinney 2011) ...................................2, 19, 22, 23

New York Partnership Law § 40 (McKinney 2011) ................................... *passim*

New York Partnership Law § 43(1) (McKinney 2011) ............................... *passim*

New York Partnership Law § 62 (McKinney 2011) ............................................3

New York Partnership Law § 64 (McKinney 2011) ..........................................10

New York Partnership Law § 71 (McKinney 2011) ..........................................10

New York Partnership Law § 73 (McKinney 2011) ..........................................15

## RULES

Fed.R.Civ.P. 56 ..................................................................................................8

Fed.R.Civ.P. 56(c) .............................................................................................8

Fed.R.Civ.P. 56(e) .............................................................................................8

Development Specialists, Inc. ("DSI"), in its capacity as the Plan Administrator for the liquidation of Coudert Brothers LLP ("Coudert"), respectfully submits this Memorandum of Law in support of DSI's cross-motion for partial summary judgment.

## PRELIMINARY STATEMENT

By this Cross-Motion, DSI seeks an order of partial summary judgment on the narrow question of whether Coudert, a dissolved insolvent partnership, has a property interest in hourly fee matters that were pending but uncompleted at the time of Coudert's dissolution where the firm's partnership agreement is silent on the issue.

Under New York law, these unfinished matters pending as of the date of dissolution are "partnership property".  New York Partnership Law ("NYPL") provides that partners, including lawyers, have a fiduciary duty to account to their partners for profits from *all* matters that are pending but incomplete at the time of dissolution of the partnership. There are no exceptions from this duty in the NYPL.

In the law firm context, the overwhelming body of cases decided by the New York Appellate Division that have addressed contingency cases have concluded that these cases are assets of the dissolved firm.  New York courts and the Second Circuit have expressly rejected the argument that the dissolved law firm's recovery on such cases is limited to *quantum meruit* for work performed pre-dissolution, and have stated that the dissolved firm is entitled to the value of such cases assessed as of the date of dissolution.  The rationale employed by the New York courts in applying the so-called unfinished business doctrine to contingency cases – rooted in all partners' fiduciary duty to account to the dissolved firm -- applies equally to hourly cases, and leads inescapably to the application of the doctrine to hourly matters (or other hybrids).

Because the unfinished business doctrine arises from a partner's fiduciary duty and not principles of *quantum meruit*, there is no principled basis to limit the doctrine's application to

contingency cases.  Further, because partnership law imposes a broad duty on a partner to account to his former firm, the choice of billing arrangement cannot vitiate that duty.

The NYPL is a uniform statute based on the Uniform Partnership Act ("UPA") which has been enacted in every state except Louisiana.  It was enacted by the New York legislature with an express direction, NYPL § 4(4), that provisions of partnership law be applied and construed uniformly with the other states which have adopted the UPA.

Every court outside of New York that has considered this issue under the identical statute has applied the unfinished business doctrine to hourly cases.  New York's Appellate Division has cited to NYPL § 4(4) in following out-of-state decisions interpreting the UPA concerning the unfinished business doctrine, and has in fact rejected another New York decision which was inconsistent with those out-of-state decisions.  The Second Circuit has likewise followed the "majority" of out-of-state decisions in determining an issue concerning the application of the unfinished business doctrine.

The relief sought by DSI -- a finding that the pending and incomplete cases brought to the Law Firms by the Coudert partners are assets of Coudert's estate  -- and the potential impact arising therefrom, are limited in nature.  That ruling would apply only to law firms (i) *in dissolution; and (ii) which have not addressed this issue in their partnership agreements*.  That finding would not apply to new matters obtained from former clients.

Partners in law firms are free to address this subject in their partnerships agreements. The ruling sought by DSI would not apply to dissolved law firms which have such agreements.  The application (or not) of the unfinished business doctrine in the event of a dissolution is thus a matter of choice.  However, if the partnership *chooses* not to address the doctrine, the partners

are bound to comply with their fiduciary duties to account to the dissolved firm for those pending but incomplete matters they take with them to their new firms.

## STATEMENT OF FACTS

### A.    Coudert Brothers

Coudert is a law firm partnership that was first organized in 1853.  Declaration of Charles B. Keefe (the "Keefe Decl.") ¶ 3.  Coudert was an international law firm with offices in 28 locations at its peak in 2000.  *Id*. The affairs of Coudert are governed by a detailed partnership agreement dated as of December 30, 2004, as amended ("Agreement" or "Agt").  *Id.* and Ex. A. In providing legal services, the clients always retained the Firm (or another related partnership), not the individual partner. *Id.* ¶ 4 and Ex. A. Article 8.1 of the Agreement provides that the "property of the partnership belongs to the Partnership and not to the Partners." *Id.*.

In contrast to NYPL § 62, the Agreement provides that a dissolution is not caused by the departures of partners either voluntarily (*i.e.* withdrawal) or involuntarily (*i.e.* death, disability or termination) and the partnership does not dissolve.  Agt., Arts. 3.i, 9.a, 11, 12.  Article 10 of the Agreement addresses dissolution of the Firm and provides that:

> a.    **Dissolution**:  The Partnership may only be dissolved and wound up by an affirmative vote of a Super Majority of the Executive Board then serving and an affirmative vote of the Equity Partners in accordance with Article 3(a)(ii).[1]  *Such dissolution and winding up, and the rights of the Partners in connection therewith shall be governed by the provisions of the [Partnership Law of the State of New York]*. (emphasis added).

Although the Agreement states the method by which the Firm can be dissolved, it is silent on the duties and the obligations of the partners post-dissolution other than to note that the dissolution is governed by New York Partnership Law.  *Id.* ¶ 7.

---

[1] Pursuant to the Special Authorization by the Equity Partners adopted on August 16, 2005, which authorized the wind down of the Firm, this sentence was replaced by the text of the Special Authorization.  Keefe Decl., Ex. A.

3

On August 16, 2005 (the "Dissolution Date"), the Equity Partners of Coudert voted to wind down the business of the Firm and sell the assets of the Firm in order to realize the maximum value of such assets (the "Dissolution"). *Id.* ¶ 8.   On the Dissolution Date, there were approximately 93 Equity Partners, 22 Contract Partners and 70 Retired Partners, as such terms are defined in the Agreement. *Id.*  The Dissolution established the "wind down" phase of Coudert but did not terminate the partnership. *Id.* ¶ 9. Coudert remains in existence today, and most of the Partners as of the Dissolution Date continue to receive K-1 tax statements every year. *Id.* and Ex. B.

**B.     Coudert's Bankruptcy and the Claims Asserted**

Coudert filed for bankruptcy under chapter 11 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on September 22, 2006. *See* Declaration of David J. Adler ("Adler Decl."), Ex. 1, § 1.81.  Harrison J. Goldin (the "Examiner") was appointed to determine whether Coudert was, *inter alia*, solvent on the Dissolution Date.  Thereafter, the Examiner prepared a report (the "PCP Report") which identified amounts for each partner to pay back to the estate.[2] *Id.* Ex. 18.  If a partner agreed to pay this amount to the estate and executed an agreement (the "PP Settlement Agreement")[3], that partner was granted a broad release under the proposed plan of liquidation.[4] Approximately, 94, or 85%, of the Equity and Contract Partners of Coudert as of the Dissolution Date elected to become Participating Partners and assigned their rights to DSI.  Keefe Decl. ¶ 10.

---

[2] The PCP Report excluded unfinished business claims against partners. *See* PCP Report, fn. 12.
[3] Under the PP Settlement Agreement, a Participating Partner was required to assign any claims he/she might have against other partners to the Plan Administrator.  *See* Adler Decl. Ex. 2.
[4] The release granted under the Plan did not extend to "any Claims owned by the Estate … which arise from or under the "unfinished business doctrine" … provided that the Plan Administrator shall not name any Participating Partner as a defendant in any suit … [unless] after the court hearing such suit … determines in response to a motion that such suit … cannot continue absent the joinder of such Participating Partner..."  *See* Plan at §7.4(b)(iv).

On August 27, 2008, the Bankruptcy Court entered an Order confirming the First

Amended Plan of Liquidation dated May 9, 2008 (as Modified) (the "Plan").  Adler Decl. Ex. 1.

The Plan went effective on September 8, 2008, and DSI was appointed as of that date.  *Id.* ¶ 5.

Under Section 5.2 of the Plan, DSI is authorized to act in the name of the Firm. *Id.* Ex. 1.

### C.    Non-Disputed Material Facts

The material facts on which this cross-motion is based are undisputed.

- The affairs of Coudert are governed by a detailed partnership agreement that does not address dissolution other than to note that dissolution is governed by New York Law. (Keefe Decl. ¶ 7 and Ex. A).

- In connection with the provision of legal services, Coudert (or one of its related partnerships) was retained by clients to perform legal services. Article 3.e of the Agreement provides that: "[a]ny compensation for personal services earned or received by the Partners as legal fees or otherwise …. shall be the property of the Partnership."  (Keefe Decl. Ex. A).

- Coudert was typically compensated in one of three manners: (i) standard or modified hourly rates; (ii) fixed fee or (iii) contingency.  Contingency matters may include those matters in which Coudert's payment would be contingent upon a specified event (e.g. in certain corporate matters a transaction closing or in litigation matters upon a recovery to the client). (Keefe Decl. ¶ 5).

- Article 8.1 of the Agreement provides that the "property of the partnership belongs to the Partnership and not to the Partners." (Keefe Decl. Ex. A).

- Certain former partners (as identified in the Keefe Declaration, Ex. C) joined new law firms as partners following the dissolution. *Id.* ¶ 11.

The Law Firms have submitted affidavits admitting the following material facts:

- The Law Firms hired the former partners after the Dissolution Date.

- The Former Partners brought to their new Law Firms matters from Coudert.[5]

---

[5] *See* Affidavit of Arthur Newbold of Dechert ¶¶ 2-5; Affidavit of Charles J. O'Donnell of Duane Morris ¶¶ 3-7; Affidavit of Kevin P. Richardson of Jones Day ¶¶ 4-9; Affidavit of Brett H. Miller of Morrison & Foerster ¶¶ 3-6;  Affidavit of Jeffrey N. Rich of K&L Gates ¶¶ 4-7; Affidavit of Theresa Warman of Sheppard Mullin ¶¶ 2-6; Affidavit of Kay C. Georgi of Arent Fox ¶¶ 1-5; Affidavit of John M. Gurley of Arent Fox ¶¶ 1-5; Affidavit of Robert Hughes of DLA Piper ¶¶ 3-8; Affidavit of Brian McGunigle of Dorsey & Whitney ¶¶ 3-7.

- The Law Firms billed and collected legal fees from the former Coudert clients.[6]

## PROCEDURAL HISTORY

On September 21, 2008 and on April 3, 2009, the Plan Administrator commenced actions (the "Actions") against the defendant Law Firms (the "Law Firms"). Among other things, the Actions identify the Partners who joined the Law Firms and seek to recover sums on account of "unfinished business" (*i.e.* business of Coudert that was pending but uncompleted on the Dissolution Date). Adler Decl. ¶¶ 6, 9. With the exception of the actions against Dechert and DLA Piper US (which also assert fraudulent conveyance claims), the Actions assert four causes of action: (i) accounting; (ii) turnover; (iii) unjust enrichment and (iv) conversion. Pursuant to Section 7.4(b)(iv) of the Plan, in those actions where DSI is seeking to recover based on unfinished business transferred by a Participating Partner, only the Law Firm is named as a party for the reasons described above.[7]

The Law Firms filed motions to dismiss the Actions, which DSI opposed. At a preliminary hearing on April 3, 2009, the Bankruptcy Court requested further briefing from the parties on several issues. *Id.* ¶ 7. Those issues were briefed in July of 2009. *Id.* ¶ 8. After the Court heard argument on July 31, 2009, the Court denied the motion on August 7, 2009. *Id.* ¶

---

[6] Akin claims that the Coudert partner that it hired brought only new matters separate and distinct from matters on which the Coudert clients had previously retained Coudert. *See* Affidavit of Frank Stenger-Castro ¶ 3. Because DSI has not yet conducted discovery, it cannot confirm the accuracy of that statement. Coudert did not keep after its dissolution the pending matters on which the Coudert partners which joined Akin worked. (Keefe Decl. ¶ 14). Although Akin says it took the clients but not the pending matters, the matters went to some firm, and it seems unlikely that the former clients which retained Akin for some matters would not have also retained Akin on the pending Coudert matters. That issue can be resolved in discovery. However, for purposes of this motion, the Court can find that to the extent that Akin did receive such pending matters, the profits from those matters are the property of Coudert.

[7] The Partners who went to Jones Day did not elect to become Participating Partners and they are thus named as co-defendants with Jones Day. *See e.g. DSI v. Geoffrey De Foestrates*, *DSI v. Scott Jone,* and *DSI v. Jingzhou Tao*.

10. That decision was later embodied in a Modified Bench Ruling filed by the Court on

November 18, 2009 (in the DLA action) and on January 19, 2010 (the "<u>MBR</u>").  *Id.*

In the MBR, the Bankruptcy Court determined that the unfinished business doctrine

applied to hourly fee cases.  In so ruling, the Bankruptcy Court relied on, among other things,

principles of New York Partnership Law and the Second Circuit decision in *Santalucia*, and

concluded that the unfinished business doctrine applies to hourly cases:

> there is well-reasoned authority from other jurisdictions applying the same underlying
> "unfinished business" theory to hourly fee matters. Based on those highly persuasive
> precedents, I conclude that to the extent that DSI is seeking to assert claims based on the
> unfinished business doctrine with respect to hourly fee matters, in addition to
> contingency fee matters or hybrids of the two billing methods, it may do so and that the
> motions to dismiss on that basis should be denied. *See*, among other authorities, *Robinson
> v. Nussbaum*, 11 F.Supp.2d (D.D.C. 1997); *Ellerby v. Spiezer*, 485 N.E.2d 413 (Ill. App.
> 1985); *In re LaBrum & Doak LLP*, 227 B.R. 391 (Bank. E.D. Pa. 1998); and *In re
> Brobeck, Phleger & Harrison LLP*, 408 B.R. 318 (Bankr. N.D. Cal. 2009)….
>
> Moreover, the Second Circuit in *Santalucia*, as well as the First Department in *Shandell*,
> specifically concluded that it would be improper to make such a bright line distinction on
> a quantum meruit basis between pre-dissolution and post-dissolution work and to divide
> up a post-dissolution contingency fee on such a basis. *Shandell*, 629 N.Y.S.2d at 438-39;
> *Santalucia*, 232 F.3d at 298. If the New York courts actually meant to impose such a
> dividing line not only between the valuation of the matter as of the partnership's
> dissolution but also a valuation of the underlying services that would give rise to a post-
> dissolution credit to the departing partner, they would have said so. Moreover, the
> language that I have quoted, I believe, is easily susceptible to an interpretation that does
> not follow the defendants' approach. That is, I believe one can view the formulation that I
> quoted from *Santalucia* as stating that (a) the court needs to value the matter as of the
> dissolution date; however, (b) where the matter results in a settlement that is attributable
> to a partner's post-dissolution effort, skill and diligence resulting in a recovery in excess
> of the objective valuation of the matter on the dissolution date, that excess (over and
> above the objectively projected dissolution-date value) should not be treated as property
> of the dissolved firm but should, rather, be retained by the partner who created it.

*Id.*, Ex. 5 at 38, 44-45.

The Law Firms then sought to obtain direct certification from the Bankruptcy Court

under 28 U.S.C. §158(d)(2) for review by the Second Circuit, and leave to file an interlocutory

appeal from the Order.  *Id.*  The Bankruptcy Court denied the 158(d) Motion on February 5,

2010.  The Law Firms' Leave to Appeal Motion was denied by District Judge Marerro in a decision and order dated March 23, 2011.  *See In re Coudert Brothers LLP Law Firm Adversary Proceedings*, 447 B.R. 706 (S.D.N.Y. 2011).

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that: "[a] party may move for summary judgment identifying each claim or defense – or the part of each claim or defense on which summary judgment is sought."   Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Id.*; *see also O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir.2002); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c).

## ARGUMENT

### I. SUMMARY JUDGMENT ON THE NARROW ISSUE THAT THE UNFINISHED BUSINESS DOCTRINE APPLIES TO HOURLY CASES IS APPROPRIATE

#### A.  Nature of a Partnership

New York has adopted the UPA.  The UPA is the default rule and "partners are encouraged to have a partnership agreement in writing." *See Ederer v. Gursky*, 9 N.Y. 3d 514 (2007).  "It is beyond cavil in New York that a member of a law firm owes a fiduciary duty to the other members of the firm." *Santalucia v. Sebright Transportation, Inc.*, 232 F.3d 293, 297 (2d Cir. 2000). "Law partners, no less than any other business or professional partners, are bound by a fiduciary duty requiring 'the punctilio of an honor the most sensitive.'" *Graubard Mollen*

8

*Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112 (1995) (quoting *Meinhard v. Salmon*, 249

N.Y. 458 (1928)).  A partner's fiduciary duties include, among other things, that:

- no partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.  NYPL § 40(6) (McKinney 2011).[8]

- every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property. NYPL § 43(1) (McKinney 2011).[9]

**B.  Dissolution of a Partnership and Unfinished Business**

NYPL § 61 provides that "[o]n dissolution, the partnership is not terminated, but

continues until the winding up of the partnership affairs is completed."  NYPL § 61 (McKinney

2011).  The business activity of a partnership in dissolution is limited to "completing transactions

unfinished at dissolution." NYPL § 66(1)(a); *Scholastic Inc., v. Harris*, 259 F. 3d 73, 85 (2d Cir.

2001); *Bayer v. Bayer*, 215 A.D. 454, 472-73 (1st Dep't 1926).  *See also Beste v.Burger*, 17 Abb.

N. Cases 162 (Sup. Ct. 1885) ("it is a very clear proposition that when a partnership is dissolved,

it is not dissolved with regard to things past, but only with regard to things future."); *King v.*

*Leighton*, 100 N.Y. 386, 393-94 (1885) ("we are clearly of the opinion that, upon the dissolution

---

[8] NYPL § 40(6) provides that only "surviving partners" (i.e. partners who perform services after the death of another partners) are entitled to "reasonable compensation" for services provided in winding up the business.  The Revised Uniform Partnership Act ("RUPA"), which has not been enacted in New York, changed this rule to permit any partner winding up the business to receive compensation, not just a surviving partner winding up after the death of another partner. *See* Comments to the Revised Uniform Partnership Act which can be found at http://www.law.upenn.edu/bll/archives/ulc/uparta/1997act_final.htm#TOC2_1.

[9] The Official Comment to section 21 of the UPA gives the following hypothetical: "A, B and C are partners; A, as a result of a transaction connected with the conduct of the partnership, has in his hands, so that it may be traced, a specific sum of money or other property. A is insolvent. Is the claim of the partnership against A a claim against him as an ordinary creditor, or is it a claim to the specific property or money in his hands? The words "and hold as trustee for the partnership any profits" indicate clearly that the partnership can claim as their own any property or money that can be traced."  Uniform Partnership Act § 21, comment.

of a firm … it is the [d]uty of the surviving or solvent members to take possession of the firm assets and perform its contracts, extinguish its liabilities, and … to share in the profits of all business unfinished at the dissolution, but completed afterwards"). Dissolution also terminates the authority of partners to bind the partnership "[e]xcept so far as may be necessary to complete transactions begun but not then finished." NYPL § 64.

Upon a dissolution, "the thrust of the partnership shifts from fulfilling prospective obligations to winding-up the partnership's existing business affairs and devising a method to distribute its assets." See *Bayer*, 215 A.D. at 472-73. Under NYPL § 71 "the assets of the partnership are (I) the partnership property…" NYPL § 71 (McKinney 2011). "Partnership Property" includes executory contracts. *See Stem v. Warren*, 227 N.Y. 538, 546-47 (1920); *Robinson v. Nussbaum*, 11 F.Supp. 2d 1, 6 (D.D.C. 1997) (dissolution does not terminate contracts); *Bader v. Cox*, 701 S.W.2d 677, 682 (Tex. App. 1985)("[a] contractual agreement for the performance of services in existence at the dissolution of a partnership is unfinished business of the dissolved partnership"); *see also Dawson v. White & Case*, 88 N.Y. 2d 666 (1996) (partnership property ordinarily includes good will). Post-dissolution, partners owe a continuing fiduciary duty to one another with respect to the winding up of the partnership and the preservation of partnership assets. *See Ajettix, Inc. v. Raub*, 9 Misc.3d 908 (Sup. Ct. 2005); *In re Yerulshami*, 393 B.R. 288, 295-296 (Bankr. E.D.N.Y. 2008).

Because the Agreement only states that the NYPL shall govern the dissolution and is otherwise silent on the allocation of fees post-dissolution (*see* Agt. Art. 10.a and Special Authorization ("Authorization")), the UPA serves as the default rule.

### C. The "No Compensation" Rule As Applied Under New York Law

Upon dissolution, NYPL §§ 40(6) and 43(1) require a partner to complete any unfinished business of the partnership as of the date of dissolution and only receive as compensation the

amounts provided for in the partnership agreement. As discussed below, the "No Compensation" rule arises from the fiduciary nature of a partnership and has been applied to dissolved partnerships, including law firms, for over a century.[10]

### 1. The New York Court Of Appeals Has Ruled That Unfinished Business Applies to Professional Service Partnership

In *Stem v. Warren*, 227 N.Y. 538 (1920), the Court of Appeals made clear that the no compensation rule applies to New York partnerships. In *Stem*, two architectural firms, Reed & Stem ("R&S") and Warren & Wetmore ("W&W"), entered into a partnership agreement and the partnership entered into a contract with the New York Central Railroad ("NY Central"), by which the partnership agreed to provide architectural services to NY Central in connection with the building of Grand Central Station. In 1911, the partnership dissolved upon the death of one of its partners, Charles A. Reed. After Reed's death, the client, NY Central, at the urging of W&W, gave notice of cancellation to the dissolved partnership and separately engaged W&W. *Id.* at 545.

Stem, the surviving partner of R&S, sought an accounting from W&W and a judgment to compel turnover of all post-dissolution profits related to the project. The Appellate Division determined that "the contract of the railroad company with [W&W] was an asset of the associated architects, and that [W&W] be required to account for all profits and emoluments which they made or would make in connection with work done thereon." *Id.* at 549.

_____

[10] Indeed, the Supreme Court of the United States has applied the no compensation rule to dissolving law partnerships and in doing so has cited to New York law. *See Denver v. Roane*, 99 U.S. 355, 358 (1878)("'As there is an implied obligation on every partner … to devote his services and labors for the promotion of the common benefit of the concern, it follows that he must do it without any rewards or compensation, unless there be an express stipulation for compensation.'" Story, Partn., sects. 182, 331; *Caldwell v. Leiber*, 7 Paige (N. Y.), 483. So … [if there is no] "'agreement for compensation to a surviving partner for settling up the partnership business, he is entitled to no compensation.'").

On W&W's appeal, the New York Court of Appeals addressed the following question: "[Should W&W] be held accountable to the plaintiff in this action for the profits made out of the prosecution of the joint enterprise, in so far as it related to *unfinished work* which had been assigned to them prior to the death of Charles A. Reed?" *Id.* at 546 (emphasis supplied). The New York Court of Appeals decided:

> The most valuable asset of such partnership was the contract between it and the railroad company**.** By the terms of such contract and the agreement between the associated architects the intention of the parties is manifest that the contract was to be performed notwithstanding the death of Mr. Reed if such event should occur. Upon the death of Mr. Reed it was the duty of the survivors of the firms to take possession of the firm's assets, perform the contract, extinguish the firm's liabilities, and close its business for the interest of all parties concerned, and the representatives of Reed were entitled to share in the profits of all unfinished business though subsequently completed.

*Id.* at 546-47 (emphasis added). *Stem* thus stands for the proposition that: (i) executory contracts at the time of dissolution are partnership assets; and (ii) the partners' have an obligation to complete those contracts for no additional compensation other than that which has been agreed to under a partnership agreement. While *Stem* did not address the identical issue that is before this Court, the logic of the decision applies directly here.

In *Rhein v. Peeso*, 194 A.D. 274 (1st Dep't 1920), the Appellate Division addressed the no compensation rule in the context of a dental partnership. There, the partnership pre-dissolution agreed to perform services for the client, Mrs. Benedict. Therafter, the partnership was dissolved by mutual consent. Post-dissolution, Benedict went to one of the former partners, Peeso, and asked him to correct the previous work. *Id.* at 276. Thereafter, Peeso performed all of the corrective services and received an additional sum of $1,500 for those services. *Id.*

The trial court ordered Peeso to provide an accounting but allowed Peeso to deduct from those fees "the reasonable value of the defendant's services in making said correction and the

expenses incurred therein." *Id.* The Appellate Division reversed and permitted the defendant to deduct only "the materials reasonably used by the defendant in said work." *Id.* at 277. Peeso was entitled to no additional compensation for completing the "unfinished business" of the partnership. In so ruling, the court rejected any notion that the underlying contract between the partnership and the client had any relevance to Peeso's obligation to account to his partner for the monies he received post-dissolution:

> [Rhein] claims that as under the agreement he was to liquidate the business, he had the right to do this work and earn this money. But that claim cannot be sustained…. such a claimed right is wholly unenforceable <u>because Mrs. Benedict herself had at least the right to choose which partner she would trust to do the work</u> … The liability of [Peeso] to account is found in the partnership agreement executed before dissolution with Mrs. Benedict to correct the work. It was unfinished work of the partnership. [Rhein], as liquidating partner could not have sued to collect the balance due, because the partnership had not fulfilled its part of the contract.

*Id.* at 276-77 (emphasis supplied). Relying on *Stem*, the Appellate Division held that the cause of dissolution (*i.e.* death of a partner versus mutual consent) was not a factor to be considered in determining whether the no compensation rule applied and therefore concluded:

> Under [*Stem*], as well as under the general rule governing liability after the termination of a partnership in respect to unfinished business of that partnership, the allowance permitted to the defendant for the value of his services in repairing the defective bridge would seem to have been unauthorized. *Id.* at 277.

## 2. The No Compensation Rule As Applied to Law Firm Partnerships

Consistent with the UPA, *Stem* and *Rhein*, New York courts have routinely applied this rule to law firm partnerships. In *Mooney v. Shaw*, 4 N.Y.S.2d 563 (N.Y. Sup. Ct. 1938), a law firm had dissolved upon the death of one of its partners, Edmund Mooney. His estate sought an accounting from the partners who were continuing the business and demanded a judgment for his share of profits received on unfinished business after the dissolution. The Supreme Court agreed:

where money was received by the surviving partner on business as to which nothing further remained to be done by the firm, the plaintiff is entitled to full participation in those receipts without the deduction of the 60 per cent. for expenses. If, however, the money received covered business partly completed during the lifetime of the plaintiff testator and other work to be done, the payment is to be treated as one for unfinished business, and the surviving partners are entitled to deduct 60 per cent. for expenses. This puts the Ehret payment received after the testator's death in the unfinished business class because the accounting in the estate was still uncompleted.

*Id.* at 569-70 (emphasis added). *Mooney* stands for the proposition that unless otherwise agreed, unfinished business is an asset of the partnership. In *Mooney*, the partnership agreement had addressed the allocation and the court enforced that agreement.

Similarly, in *Dwyer v. Nicholson*, 89 A.D.2d 597 (2d Dep't 1982), *appeal dismissed,* 57 N.Y.2d 955 (1982), the Second Department ruled that "[t]he decedent is entitled to share in the profits of *all* business pending on the date of the decedent's death .… Plaintiff is therefore entitled to discovery … to determine the work performed and the fees collected on cases completed *or pending* as of the date of the decedent's death." *Id.* at 598 (emphasis added). The Second Department placed no limitation on the type of cases in which plaintiff would share.

In *Dwyer v. Nicholson*, 193 A.D.2d 70 (2d Dep't 1993), the Appellate Division held that because the partnership agreement had addressed the issue, plaintiff was not entitled to share in recoveries from contingency cases. *Id.* at 71. Like *Mooney*, *Dwyer* stands for the proposition that unless otherwise agreed, unfinished business on *all* pending but uncompleted cases is an asset of the partnership. *See* MBR at 46-47.

Much unfinished business litigation has taken place over contingency cases. In those cases, the courts have followed *Stem's* holding that an executory contract is an asset of the partnership and, unless otherwise agreed, the no compensation rule applies. In *Kirsch v. Leventhal*, 181 A.D.2d 222 (3rd Dep't 1992), one of the partners (Leventhal) had an interest in a

medical malpractice matter (Geddes) which had been referred to another law firm. After dissolution, Kirsch sought an accounting. Although the court noted that there was an issue of fact as to whether the Geddes matter was in fact a partnership asset (because it had been referred to another law firm), it noted that "in the absence of a dissolution agreement providing otherwise, the case would have constituted unfinished business of the firm to be evaluated as of the date of dissolution in determining the value of plaintiff's partnership interest pursuant to Partnership Law § 73." *Id.* at 226. The court rejected the argument that the plaintiff was entitled to recover only the *quantum meruit* value of the services rendered pre-dissolution:

> Thus, we reject the contention of defendant, relying on *Aurnou v. Greenspan*, 161 A.D.2d 438, 555 N.Y.S.2d 356, *lv. denied*, 76 N.Y.2d 713, 563 N.Y.S.2d 768, 565 N.E.2d 517 that, because the Geddes case was under a contingent fee arrangement and had not been disposed of before the partnership was dissolved, plaintiff as the withdrawing partner was not entitled to a partnership share in any fee subsequently received but only to the quantum meruit value of the services, if any, he personally performed in the case.

*Id.* at 224-25. *Kirsch* concluded:

> That plaintiff may be entitled to a share in the value of the Geddes case at the date of dissolution does not, however, imply that he correspondingly would have a right to his full partnership share in the fee subsequently received when the case was settled following dissolution. Plaintiff is only entitled to "the value of his interest at the date of dissolution ... with interest, or, at his option ... in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership" (Partnership Law § 73). To the extent that the ultimate successful settlement of the Geddes case was due, as defendant avers, to her postdissolution efforts, skill and diligence, the firm's fee in the Geddes case proportionately would not be "'attributable to the use of [plaintiff's] right in the property of the dissolved partnership.'" *Id.*

While the underlying case at issue in *Kirsch* was a contingency matter, the language employed by the court makes clear that the fiduciary duties of a partner of a dissolved firm extend to *any* matters the partner worked on. *Id.* at 225-226 (a partner has a fiduciary duty to "complete performance of any partnership service contracts for the benefit of all partners")(emphasis added, citing *Stem* and a number of out of state cases for that proposition).

By employing such language and citing to *Stem* (and its no compensation rule), *Kirsch* confirms that the unfinished business doctrine is not limited to only certain kinds of matters.

The Appellate Division again revisited the no compensation rule in *Shandell v. Katz*, 217 A.D.2d 472 (1st Dep't 1995). There, the court concluded that:

> The motion court applied the rule of Aurnou v Greenspan (161 AD2d 438), which held that a withdrawing partner in a law firm may only share in contingency fees collected after a partnership dissolution to the extent that he has participated in earning them by his actual services, on the theory of quantum meruit. In Aurnou, the withdrawing partner had been appointed to fill a judicial vacancy and was thus ethically barred from performing work on the cases after dissolution. Quantum meruit was used as a measure of his work performed prior to dissolution. We decline to apply the Aurnou rule to this record, and limit it to its facts. A better rule and that followed in the other Departments of New York is that absent an agreement to the contrary, pending contingency fee cases of a dissolved partnership are assets subject to distribution. In Dwyer v Nicholson (193 AD2d 70, 73) the Second Department specifically declined to follow the Aurnou rule and stated that it appears to conflict with settled law under the Uniform Partnership Act, and has been specifically rejected in other states. (See also, DelCasino v Koeppel 207 AD2d 374.)" *Id.* at 473.

A number of other New York Appellate Division cases have addressed this rule, and have found that absent an agreement to the contrary, pending contingent fee cases of dissolved partnership are assets subject to distribution, and the lawyer taking such cases from the dissolved firm must remit to his former firm the settlement value of the case measured at the time of dissolution. *See Shiboleth v. Yerulshami*, 58 A.D.3d 407 (1st Dep't 2009); *Murov v. Ades*, 12 A.D.3d 654 (2d Dep't 2004); *Grant v. Heit*, 263 A.D.2d 388, (1st Dep't 1999); *DelCasino v. Koeppel*, 207 A.D.2d 374 (2d Dep't 1994).

### D. Santalucia v. Seabright Transportation, Inc.

As this Court observed in its November 2, 2011 Decision in this matter, a key issue in applying the unfinished business doctrine to hourly fee cases has been whether the doctrine is based on principles of *quantum meruit*, or, rather, in the partners' continuing duties to their

former firm, "including the duty to account for profits earned as a result of the dissolved firm's former business." (November 2, 2011 Decision at pp. 6-7).

In *Santalucia*, the Second Circuit squarely addressed the issue of the source of a partner's duty to account to his former law firm for fees from a contingency matter concluded by him after the firm's dissolution. In that case, the district court had ruled that the dissolved firm was limited to a *quantum meruit* recovery of the value of the time its lawyers spent working on the matter prior to dissolution. *Santalucia*, 232 F.3d at 294. The Second Circuit reversed that ruling, and found that under New York law, the former firm could receive post-dissolution fees from the departed lawyer. *Id.* at 295.

In reaching its decision, the Second Circuit analyzed New York law regarding "the fiduciary duty owed by lawyers to their former law firms." *Id.* at 297. [11] The Second Circuit noted that the New York Appellate Division cases "uniformly hold that 'absent an agreement to the contrary, pending contingent fee cases of dissolved partnership are assets subject to distribution.'" *Id.* at 298-299. The Second Circuit therefore concluded that New York law provides that **when a law firm dissolves and a lawyer leaves with a contingency case, absent an agreement to the contrary, that case is property of the partnership and the lawyer must remit to his former firm the settlement value of the case measured at the time at time of dissolution.** *Id.* at 300-301, citing *Shandell* and *Kirsch*.

In rejecting a *quantum meruit* recovery limited to the dissolved firm's pre-dissolution work, the *Santalucia* Court found that "[t]he source of the duty [of a lawyer to account to his

---

[11] *Santalucia* noted that "where New York law is unsettled, this Court is obligated to 'carefully … predict how the state's highest court would resolve the uncertainty or ambiguity.' [citation omitted]. In making this prediction, we give the 'fullest weight' to pronouncements of the state's highest court, while giving 'proper regard' to relevant rulings of the state's lower courts. [citations omitted]. We may also consider 'decisions in other jurisdictions on the same or analogous issues.' [citations omitted]." *Santalucia*, 232 F.3d at 297.

former partners] is the fiduciary relationship of trust and confidence that lawyers have from time immemorial shared with one another." *Id.* at 300; *see also* NYPL § 43 ("every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property."). That conclusion is directly based on New York law, including the *Shandell* decision, which as the *Santalucia* Court observed, "flatly reject[ed] a *quantum meruit* rule that a lawyer could share in contingent fees collected after dissolution only to the extent that he had participating in earning the fee by actual services." *Id.* at 298. *See also Kirsch*, 181 A.D.2d at 225 (same).

### E. The Rule's Rationale Applies Equally to Contingency and Hourly Cases

The rationale for the application of the unfinished business doctrine to contingency cases -- a partner's duty to account to the dissolved firm – applies equally in hourly cases, and fully supports the application of the doctrine to such cases. Indeed, "unfinished business" is "unfinished business" regardless of whether it is hourly or on contingency -- the same partnership principles apply to either type of case. *See Rothman v. Dolin*, 20 Cal.App.4th 755, 759 (Cal. App. 1993) ("we hold that unfinished business simply consists of all matters in progress which have not been completed at the time the firm is dissolved . . . [t]hat one matter is to be compensated at an hourly rate and another on a contingency basis is of no consequence in determining whether a matter is unfinished business"); *Official Committee of Unsecured Creditors v. Ashdale (In re Labrum & Doak)*, 227 B.R. 391, 408 (Bankr. E.D.Pa. 1998) (unfinished business applies to both hourly and contingency matters).

Because partnership law imposes a broad fiduciary duty on a partner to account to his former firm, the fact that the partner takes from the dissolved firm one type of matter rather than another cannot alter that duty. Excluding hourly cases from this duty would directly contravene

the explicit requirement under NYPL § 43(1) that a partner must account for all "profits derived by him without consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property." *Id.*

Since the Second Circuit and New York courts have made clear that the unfinished business doctrine is not limited to a *quantum meruit* recovery of pre-dissolution work, there is no persuasive conceptual basis not to apply the doctrine to hourly cases. Accordingly, that doctrine applies in these cases.

**F.     The "No Compensation" Rule Applied In Other Jurisdictions**

As noted, the NYPL is based on a uniform statute and was enacted by the New York legislature with the proviso that the law be applied and construed uniformly with the other states which have adopted the UPA. NYPL § 4(4) states that partnership law should be uniformly interpreted:

> This chapter [including sections 40, 43, and 73] shall be so interpreted and construed as to effect it general purpose to <u>make uniform the law of those states which enact it</u>.

NYPL § 4(4) (McKinney 2011)(emphasis added).

Other jurisdictions interpreting the very same sections of the UPA at issue here have uniformly applied the unfinished business doctrine to hourly rate cases. *See Robinson v. Nussbaum*, 11 F.Supp.2d 1 (D.D.C. 1997); *Young v. Delaney*, 647 A.2d 784 (D.C.Ct. App. 1994); *Beckman v. Farmer*, 579 A.2d 618 (D.C.Ct. App. 1990); *Greenspan v. Orrick Herrington & Sutcliffe, LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318 (Bankr. N.D.Cal. 2009); *In re Labrum & Doak,* 227 B.R. at 409; *Rothman,* 20 Cal.App.4[th] at 759; *Smith Keller & Assoc. v. Dorr & Assoc.,* 875 P.2d 1258 (Wyo. 1994); *Platt v. Henderson*, 361 P.2d 73 (Or. 1961); *Hammes v. Frank*, 579 N.E.2d 1348 (Ind.Ct.App. 1991).

In *Robinson*, the District Court for the District of Columbia was asked to rule on the same question that is before this Court. The Court found that the unfinished business doctrine applied to hourly cases:

> First, dissolution of a law partnership does not terminate existing contracts with its clients. And second, former partners who honor these existing contracts do so as fiduciaries for the benefit of the former partnership…The nature of the underlying contractual relationship between the dissolved partnership and its client does not alter the legal status of a dissolved partnership nor does it change the fiduciary duties each partner must honor towards another. <u>They remain the same regardless of how an attorney agrees to be compensated by his clients</u>**.** As a result, all matters pending at a dissolved law partnership at the time of dissolution are "uncompleted transactions" under the Partnership Act and are subject to winding up and distribution according to the former partner's respective interests.

*Id*, 11 F.Supp. 2d at 6. *See also Young*, 647 A.2d at 784; *Beckman*, 579 A.2d at 618.

Similarly, in *In re Labrum & Doak*, the bankruptcy court held that fees derived from post-dissolution hourly-fee cases were estate property. *In re Labrum & Doak*, 227 B.R. at 408. The court found that principles of partnership law -- that "dissolution does not terminate existing contracts with clients," and "former partners who honor these existing contracts do so as fiduciaries for the benefit of the former partnership" -- required that "former partners who honor existing contracts do so as fiduciaries for the benefit of the former partnership with no remuneration for services performed." *Id.* at 411.

In *Brobeck, Phleger & Harrison LLP*, the court made several rulings which are directly applicable here, including the following: (i) the unfinished business doctrine applies to hourly rate cases; (ii) the unfinished business doctrine applies to dissolutions of large law firms where partners migrated to numerous other firms; (iii) unfinished business is property of the estate; and (iv) the trustee can recover those profits received by partners and law firms which received transfers of unfinished business. *Id.*, 408 B.R. at 318. *See also In re Heller Ehrmann LLP v. Arnold & Porter (In re Heller Ehrmann)*, 2011 WL 1539796 (Bankr. N.D.Cal. 2011).

The Supreme Courts of at least two other jurisdictions have reached the same conclusion. In *Platt v. Henderson*, 361 P.2d 73 (Or. 1961), a partnership had dissolved in July, 1957. Prior to dissolution, one of the partners (Henderson) had been approached to handle a matter. The partner was subsequently engaged and received a fixed fee of $30,000 (which was not contingent) for handling the appeal. The vast majority of the work was performed post-dissolution by Henderson. *Id.* at 76-77. Consistent with the "no compensation" rule, the Oregon Supreme Court held that Mr. Henderson was required to turnover these fees because the matter was unfinished business at the time of dissolution. *Id.* at 83-85.

Similarly, in *Smith Keller & Assoc. v. Dorr & Assoc.*, 875 P.2d 1258 (Wyo. 1994), two accounting firms had entered into a partnership. Subsequently, the partnership was dissolved. The Wyoming Supreme Court ordered that an accounting be provided and that the accounting include post-dissolution fees:

> the accounting should establish the present market value of any tangible or intangible assets of DKBP, *including the value of the client base* that we have identified as goodwill. These assets, which were not previously distributed by the first arbitration award, may be held by SK & A, D & A or the Dorr faction. Additionally, D & A and the Dorr faction must account to SK & A for any post-dissolution profits earned from continuing business of the DKBP partnership under the work in process rule.

*Id.* at 1268 (emphasis added). *See also* MBR at 50 ("the ultimate determination will be a fact based analysis … as to the objective projected net present value of the pending unfinished matter on the firm's dissolution date, based on the hypothetical continuation of the matter to its reasonably anticipated completion by an ongoing firm with Coudert's characteristics.").

The logic of the numerous other decisions which have applied the unfinished business doctrine to contingency cases also applies to hourly rate cases. For example, in *Resnick v. Kaplan*, 434 A.2d 582 (Md. 1981), the Court determined that post-dissolution, fees earned by the partners for services to partnership clients had to be collected and divided according to the

partnership agreement until work was completed on those client files.  *Id.* at 587-88; *see also Marr v. Langhoff*, 322 Md. 657, 668-69 (Md. 1991)("*[w]ork in progress at the time of dissolution is an asset of the dissolved firm* and the partners have an obligation to complete the work in progress.")(emphasis added).

Similarly, in *Vowell v. Beddow*, 679 So.2d 637 (Ala. 1996), the Supreme Court of Alabama affirmed the application of unfinished business doctrine to a contingency case but noted that "the trial court held that in the absence of an agreement by partners of a law partnership or shareholders of a law professional association, the majority rule requires that legal fees earned from clients of the partnership or professional association be divided according to the interest of each partner in the partnership or the interest of each shareholder in the professional association."  *Id.* at 640.  *See also Sullivan v. Bodney*, 820 P.2d 1248, 1251 (Kan. Ct. App. 1991)(same); *Sufrin v. Hosier*, 896 F.Supp. 766, 770 (N.D. Ill. 1995)( "[i]f there is any disproportionate burden of completing unfinished business here, it results from the parties' failure to have entered into a partnership agreement which … provide[d] for dissolution …."); *Frates v. Nichols*, 167 So.2d 77, 80 (Fla. Dist. Ct. 1964)("[w]e adopt the rule recognized by our sister states that the retention of a law firm obligates every member thereof to fulfilling that contract, and that upon a dissolution any of the partners is obligated to complete that obligation without extra compensation....").

In determining the scope of the unfinished business doctrine, courts construing New York law have followed out-of-state decisions in applying the unfinished business doctrine pursuant to NYPL § 4(4).  For example, in *Kirsch*, the Appellate Division noted that out of state decisions on this issue were entitled to significant precedential value:

> Ascribing a value to pending contingent fee personal injury files as a partnership asset in
> dissolution is the prevailing position in other states which, like New York, have adopted

the [UPA], and, thus, **such decisional application of the UPA is entitled to significant precedential value**." (*see* Partnership Law § 4(4), *Bader v. Cox*, 701 S.W.2d 677 (Tex. Ct. App. 1985); *Ellerby v. Spiezer*, 138 Ill.App.3d 77, 92 Ill.Dec. 602, 485 N.E.2d 413 (App. Ct. Ill. 1985); *Resnick v. Kaplan*, 49 Md.App. 499, 434 A.2d 582 (Md. App. 1981); *Jewel v. Boxer*, 156 Cal.App.3d 171, 203 Cal.Rptr. 13 (Cal. App. 1984); *Rosenfeld v. Cohen*, 146 Cal.App.3d 200, 194 Cal.Rptr. 180 (Cal. App. 1983); *In re Estate of Barbera*, 55 Ill.2d 235, 302 N.E.2d 302 (Supreme Ct. Ill. 1973); *Frates v. Nichols*, 167 So.2d 77 (Fla. App. 1964); *see also*, Annotation, *Rights as to Business Unfinished or Fees Uncollected upon Withdrawal or Death of Partner in Law Firm*, 78 A.L.R.2d 280.)

*Kirsch*, 181 A.D. 2d at 225 (emphasis added).

The *Kirsch* court not only relied on the out-of-state cases, but expressly rejected an earlier New York Appellate Division decision, *Aurnou v. Greenspan*, 161 A.D.2d 438, 556 N.Y.S.2d 356 (1st Dep't 1990), because it conflicted with the out-of-state decisions construing the UPA. *Id.*[12] *See also Dwyer*, 193 A.D.2d at 73 (declining to follow *Aurnou* because it conflicted with settled law under the UPA and has been specifically rejected in other states); *Santalucia*, 232 F.3d at 299 (finding that New York Court of Appeals would likely follow reasoning of "majority of states to confront the issue" and New York Appellate Division decision in extending fiduciary principles of partnerships to professional corporations).

The foregoing analysis was adopted in large part by the Bankruptcy Court in reaching its conclusion that the unfinished business doctrine applies to the hourly cases that were transferred to the Law Firms. *See* MBR at 38-48. As Judge Marrero found in denying interlocutory appellate review of the Bankruptcy Court's decision, there is no substantial ground for disagreement with the merits of that decision. *See Coudert*, 447 B.R. at 712-13.

---

[12] For the same reason, this Court is not bound to follow the unpublished trial court decision in *Sheresky v. Sheresky Aronson Mayefsky & Sloan LLP*, Index No. 150178/2010. That decision is contrary to numerous applicable authorities, including, among others, NYPL §§ 40 and 43, *Stem,* and the decisions of every out-of-state court interpreting the same statute, to which NYPL §4(4) of the Partnership Law required that court to attach "significant precedential value." *Kirsch*, 181 A.D.2d at 225. As such, the court's analysis in the *Sheresky* case was highly suspect.

## II.  THIS CROSS-MOTION SEEKS A LIMITED RULING

For the reasons explained above, Coudert has a property interest in unfinished business. As a result, entry of an order determining that the pending and incomplete cases brought to the Law Firms by the Coudert partners are assets of Coudert's estate and a declaration that Coudert is entitled to share in fees earned after Coudert's dissolution on such matters is appropriate.[13]

Such a ruling would have extremely limited application.  A finding that the unfinished business doctrine applies to those cases would apply only to law firms in dissolution which have not addressed the issue by agreement or otherwise.  Additionally, that finding would only apply to pending but incomplete matters of the dissolved firm brought to the new firm, and would not apply to new matters obtained by the partners at the new firm.  Further, because this ruling relates to dissolution, it would have no application to lateral partners withdrawing from solvent firms and joining other firms.

In upholding the application of this rule, many courts have indicated that partners are free to, and should, address this issue in their partnership agreements.  *See Ederer v. Gursky*, 9 N.Y. 3d 514 (2007)("partners are encouraged to have a partnership agreement in writing."); *Robinson*, 11 F. Supp. 2d at 6 ("partners are free (indeed encouraged) to execute written partnership agreements which provide for an exact disposition of profits from hourly rate matters after dissolution.  As *Beckman* illustrates, in practice law partners do just that.");  *In re Labrum & Doak*, 227 B.R. at 409.[14]

---

[13] If the Court denies this motion, DSI requests that it be permitted to seek summary judgment at the close of discovery, and preserves any arguments or claims which might be asserted.

[14]  It bears noting that the Heller, Thelen and Brobeck law firms all had agreements addressing the allocation of post-dissolution fees, which were challenged as fraudulent conveyances. Adler Decl., Exs. 15-17. Thus, among the recent major law firm insolvencies, Coudert was the only firm **not** to have such an agreement.  Thus, the ruling sought by the Plan Administrator will have limited application.

Thus, the application of the unfinished business doctrine (or not) is a matter of choice for a partnership. If partners choose not to address the issue, they are bound to comply with their fiduciary duties to account to the dissolved firm for unfinished business. A finding that the unfinished business is property of the estate would establish the following elements of the Plan Administrator's causes of action against the Law Firms: on the conversion claim, a finding that the Law Firms are holding property of Coudert; on the unjust enrichment count, a finding that a benefit was conferred on the Law Firms and that the Law Firms were enriched at Coudert's expense; on the accounting claim, a finding that the Law Firms must account to Coudert for their post-dissolution profits on the pending but incomplete matters taken from Coudert; and on the turnover claim, a finding that the unfinished business taken from Coudert by the Law Firms is property for purposes of 11 U.S.C. §542. A trial can be held on the remaining elements of each cause of action asserted against the Defendants and a valuation of the amounts due from each of the Law Firms to Coudert.

## CONCLUSION

For these reasons, DSI's cross-motion should be granted.

Dated: New York, New York
     January 9, 2012

McCARTER & ENGLISH, LLP

Attorneys for Development Specialists, Inc.,
Plan Administrator for Coudert Brothers
LLP

/s/ David J. Adler
David J. Adler
Joseph R. Scholz
245 Park Avenue
27th Floor
New York, New York 10167
(212) 609-6800 – Telephone
(212) 609-6921 – Facsimile