UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— :  11-cv-5968 (CM)
                                        :  11-cv-5969 (CM)
DEVELOPMENT SPECIALISTS, INC.,          :  11-cv-5970 (CM)
                                        :  11-cv-5971 (CM)
                    Plaintiff,          :  11-cv-5972 (CM)
                                        :  11-cv-5973 (CM)
v.                                      :  11-cv-5974 (CM)
                                        :
AKIN, GUMP STRAUSS HAUER &              :  11-cv-5983 (CM)
FELD, LLP, ARENT FOX LLP, DECHERT       :  11-cv-5984 (CM)
LLP, DLA PIPER (US) LLP, DORSEY &       :  11-cv-5985 (CM)
WHITNEY, LLP, DUANE MORRIS, LLP,        :  11-cv-5993 (CM)
JONES DAY, KL GATES, LLP, MORRISON      :  11-cv-5994 (CM)
& FOERSTER, and SHEPPARD MULLIN,        :  11-cv-5995 (CM)
RICHTER & HAMPTON LLP,                  :
                                        :
                    Defendants.         :
————————————————————— :

# PLAINTIFF DEVELOPMENT SPECIALISTS, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

PARTIAL SUMMARY JUDGMENT IN FAVOR OF DSI IS APPROPRIATE.............................1

    A.     Unfinished Matters Are Partnership Property...........................................................1

    B.     The Agreement Is Silent ........................................................................................4

    C.     Cases From Other Jurisdictions Are Entitled to Significant Precedential
             Weight.....................................................................................................................7

    D.     Application of the Doctrine Does Not Violate RPC 5.6.........................................9

    E.     DSI Is Entitled To Partial Summary Judgment....................................................10

CONCLUSION...............................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir.1985)...........................................................................5

*Purgess v. Sharrock*,
   33 F.3d 134 (2d Cir.1994)............................................................................5

*Robinson v. Nussbaum*,
   11 F.Supp.2d 1 (D.C. 1997).................................................................*passim*

*Santalucia v. Sebright Trans, Inc.*,
   232 F.3d 293 (2d Cir. 2000)................................................................*passim*

*Scholastic, Inc. v. Harris*,
   259 F.3d 73 (2d Cir. 2001)...........................................................................3

**STATE CASES**

*Ajettix, Inc. v. Raub*,
   9 Misc.3d 908 (Sup. Ct. 2005).....................................................................5

*Aurnou v. Greenspan*,
   161 A.D.2d 438 (1st Dep't 1990) ..............................................................7, 9

*Bader v. Cox*,
   701 S.W.2d 677 (Tex. App. 1985) ...............................................................8

*BDO Seidman v Hirschberg*,
   93 N.Y.2d 382 (1999) ..................................................................................9

*Beckman v. Farmer*,
   579 A.2d 618 (D.C. 1990) .......................................................................2, 8

*Cohen v. Grainger, Tesoriero & Bell*,
   81 N.Y.2d 655 (1993) ...........................................................................3, 4, 9

*Dupree v. Voorhees*,
   68 A.D.3d 807 (2d Dep't 2009) ...................................................................3

*Dwyer v. Nicholson*,
   193 A.D.2d 70 (2d Dep't 1993) ...................................................................8

*Ellerby v. Spiezer*,
   138 Ill. App. 3d 77 (App. Ct. Ill. 1985) ......................................................2

*Kirsch v. Leventhal*,
   181 A.D.2d 222 (3d Dep't 1992) ................................................................... *passim*

*Murov v. Ades*,
   12 A.D. 3d 654 (2d Dep't 2004) ........................................................................8, 9

*Rhein v. Peeso*,
   194 A.D. 274 (1st Dep't 1920) ..............................................................................5

*Sexter v. Kimmelman*,
   19 A.D. 3d 298 (1st Dep't 2005) ...........................................................................8

*Sexter v. Kimmelman*,
   43 A.D. 3d 790 (1st Dep't 2007) ...........................................................................9

*Shandell v. Katz*,
   217 A.D.2d 472 (1st Dep't 1995) ...................................................................2, 3, 4

*Stem v. Warren*,
   227 N.Y. 538 (1920) ..............................................................................................2

*Welman v. Parker*,
   328 S.W.3d 451 (Mo. Ct. App. 2010).....................................................................7

## RULES

Fed.R.Civ.Pro 56(d)................................................................................................2

DSI respectfully submits this Reply Memorandum of Law in further support of its Cross-Motion for Partial Summary Judgment (the "Motion").

### PARTIAL SUMMARY JUDGMENT IN FAVOR OF DSI IS APPROPRIATE

A.   <u>Unfinished Matters Are Partnership Property</u>

In its Motion, DSI established in its Statement of Material Facts ("SMF"), based on admissible evidence, that Coudert's clients retained <u>Coudert</u> (rather than the individual partners). SMF #3. Although Rule 56 requires the Law Firms[1] to dispute this contention with admissible evidence, they submit none, and simply state that this fact is "immaterial." Law Firms' Response to SMF #3. Likewise, the Law Firms admit that Article 8(i) provides that "the property of the partnership belongs to the partnership and not to Partners," but again assert that this fact is "immaterial." Law Firms' Response to SMF #4. Instead, the Law Firms contend that Coudert's partners did not intend the pending but incomplete matters as of dissolution (the "Matters") to be partnership assets (Opp. at 18), and claim that "DSI does not allege or offer evidence that the Coudert partners intended the Matters to be partnership assets." Opp. at 8, fn 3.

The engagements and fees received are partnership property under Art. 3(e) and 8(i) of the Agreement. Nonetheless, the Law Firms argue that the Agreement does not mean what it actually says, and claim, without supporting evidence, that "the intention and understanding of Coudert's partners" was that matters which were continued post-dissolution were never Coudert's property. (Opp. at 19). Although they repeatedly profess to explain what the intentions of the parties to the Agreement were, they submit no evidence, by affidavit or

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in DSI's Brief in Support of Cross-Motion (the "Brief").

otherwise, supporting their version of those purported intentions[2]

DSI's position is entirely consistent with New York law, which provides that pending executory contracts as of dissolution are assets of the partnership. *Stem v. Warren*, 227 N.Y. 538, 546-47 (1920); *accord Robinson v. Nussbaum*, 11 F.Supp.2d 1, 6 (D.C. 1997); *Beckman v. Farmer*, 579 A.2d 618, 636 (D.C. 1990); *Ellerby v. Spiezer*, 138 Ill. App. 3d 77, 81 (App. Ct. Ill. 1985). The Law Firms try to sidestep *Stem* by arguing that "whether the contract or transaction is itself the partnership's 'asset' depends on the particular contract … and the parties intent" (Opp. at 7), and note that the court in *Stem* found that a second project (the Biltmore Project) was not an asset. The Law Firms fail to explain that at the time of dissolution, the partnership in *Stem* had not yet been engaged to perform any services on the Biltmore Project. *Stem* at 550.[3] Thus, the fact that the *Stem* court determined that this project was not an asset of the partnership is not surprising because there was no contract with the client at dissolution, <u>unlike the Matters</u>.

The Law Firms continue to mischaracterize New York law by arguing that the New York unfinished business cases provide that an unfinished legal representation is not an asset of a law firm, and that the dissolved law firm's property interest is limited to "the value of its pre-dissolution services." Opp. at 9. Contrary to the Law Firms' contention, the New York cases state explicitly that the cases are the dissolved firm's assets.[4] *Santalucia* concluded:

> under New York law, when a [law firm] dissolves and a lawyer leaves with a contingent fee case, absent an agreement to the contrary, that case remains a firm asset. When the case is concluded and the contingent fee is collected, the lawyer is obligated to remit to his former firm the value of the contingent fee case measured as of the time the firm

---

[2] Contrary to the requirements of Fed.R.Civ.Pro 56(d), the Law Firms do not even bother to submit sworn statements explaining why they cannot submit admissible evidence of their version of these alleged intentions. Such unsupported claims of contractual intent fail as a matter of law.
[3] The Biltmore Project could thus be likened to a pending RFP at dissolution. DSI has not sought to recover for such "inchoate" engagements at the time of dissolution.
[4] These cases include *Santalucia v. Sebright Trans, Inc.*, 232 F.3d 293 (2d Cir. 2000), *Kirsch v. Leventhal*, 181 A.D.2d 222 (3d Dep't 1992), *Shandell v. Katz*, 217 A.D.2d 472 (1st Dep't 1995).

dissolved. *Santalucia* at 300-01 (emphasis added).

*See also Kirsch* at 224 (stating "the case would have constituted unfinished business of the firm,"

and citing *Stem*); *Shandell*, at 473 (same).[5] Because fiduciary duties remain the same regardless

of the type of matter involved, the Law Firms fail to adequately explain why a contingency fee

matter can be treated differently than an hourly case. Nothing in these cases can be read to

suggest that a different fiduciary obligation might apply depending on the type of case.

Although the Law Firms criticize DSI for claiming that the Law Firms argue that a

dissolved firm's recovery is limited to *quantum meruit* (Opp. at 9), the *quantum meruit* rule

advocated by the Law Firms now appears to refer to the two alternative measures for recovery

that apply to former lawyers in contingency cases who have been terminated by the client. *See*

*Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993) (the "*Cohen* Rule"). Under the

*Cohen* Rule, the terminated lawyer can pursue against the new firm either a claim for *quantum*

*meruit* or wait until the matter is concluded and claim a percentage of the fee. Opp. at 9.[6]

The Law Firms argue that a discharged lawyer's recovery under the *Cohen* Rule should

be the same recovery received by a dissolved law firm, which they state would be limited to the

value of its pre-dissolution services. Opp. at 11. In *Santalucia*, the Second Circuit expressly

stated that it was not deciding the case on the basis of the *Cohen* Rule:

> Because we decide this case on the basis of the rule set out in *Shandell*, we need not
> address the Firm's alternative argument that, as an attorney discharged without cause, it

---

[5] *Scholastic, Inc. v. Harris*, 259 F.3d 73, 90 (2d Cir. 2001), does not limit *Santalucia*. The *Scholastic* court noted that the continued enforceability, after dissolution, of a partnership's executory contract with a third party is a question of the parties' intent. *Santalucia*, however, applies when a successor law firm continues the dissolved law firm's prior representation.

[6] The Law Firms argue that because they were not partners of Coudert (Opp. at 6), DSI is precluded from asserting claims against them. That argument ignores NYPL § 24, which permits a party to bring an action against the partnership when a partner has committed a wrong "on behalf of and within the scope of the partnership business." *See Dupree v. Voorhees*, 68 A.D.3d 807, 809-810 (2d Dep't 2009). Indeed, the Law Firms possess Coudert's property.

may elect to [recover pursuant to the *Cohen* Rule].  The *Cohen* rule allows an attorney discharged without cause to recover from any successor counsel, whether or not the successor counsel has a fiduciary duty to the original attorney. *Id.* at 298 fn 2.

Under the New York cases, the dissolved law firm is entitled to the value of the <u>case</u> as of dissolution and is not limited to the value of its pre-dissolution <u>services</u>.[7] *Kirsch* at 225-226, *Shandell*, at 473.  *Santalucia* requires a valuation of the case on the dissolution date, taking into account the incremental value of the ex-partner's "postdissolution efforts, skill and diligence." *Santalucia* at 298.  Thus, in the context of a dissolved law firm, the amount which a dissolved firm can recover is completely different from the amount recoverable by a discharged lawyer under the *Cohen* Rule.[8]  As the Bankruptcy Court noted:

> *Santalucia*, as well as … *Shandell*, specifically concluded that it would be improper to make such a bright line distinction on a *quantum meruit* basis between pre-dissolution and post-dissolution work and to divide up a post-dissolution contingency fee on such a basis. [Citations omitted]. If the New York courts actually meant to impose such a dividing line not only between the valuation of the matter as of the partnership's dissolution but also a valuation of the underlying services that would give rise to a post-dissolution credit to the departing partner, they would have said so.

*See* MBR at 44-45.  In short, the New York cases do not apply the *Cohen* Rule to dissolved law firms by limiting their recovery in the manner suggested by the Law Firms.

B.   <u>The Agreement Is Silent</u>

In a startling change of position, the Law Firms now argue that the Agreement <u>does</u> contain a waiver of claims for unfinished business (a "<u>Jewel Waiver</u>").  *See* Opp. at 19.  This argument is directly contrary to the position taken by the Law Firms (other than Dechert and DLA) before the Bankruptcy Court in this matter, when they admitted that: "[t]he parties … agree that … (b) ***the partnership agreement was silent*** on the matter of the handling of

---

[7] The Law Firms mistakenly refer to the recovery being limited to the value of <u>services</u> (rather than the value of the <u>case</u>, as *Santalucia* requires) over a dozen times in their Opposition.
[8] Obviously, the value of these matters at dissolution is a fact intensive issue that must be determined at trial.

continuing partnership business in the event of Coudert's purported dissolution" (emphasis supplied). Supplemental Adler Declaration dated February 14, 2012 ("Supp. Adler Decl.") Ex. A. This prior statement is a binding judicial admission as to those law firms. As such, SMF #7 (which states that the Agreement is silent in this respect) must be deemed admitted by those firms. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985) ("party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding"); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994) ("court can appropriately treat statements in briefs as binding judicial admissions of fact").

In addition, this argument is disingenuous because the Law Firms did not raise this issue in support of their motion for summary judgment. Because the unfinished business rule only applies "in the absence of an agreement to the contrary," if the Law Firms actually believed that the Agreement contained a *Jewel* Waiver, they should have sought summary judgment on that issue, rather than arguing against the application of New York's default unfinished business rule.

In any case, a review of the Agreement reflects no *Jewel* Waiver. The Law Firms assert that Art. 10.b provides that the Executive Board was solely empowered to conduct the wind up of the business (Opp. at 19)[9] and that as such, the other partners owed no fiduciary obligations to Coudert after its dissolution. Opp. at 20. This analysis is contrary to New York law and the Law Firms' own prior statements.[10]  *See Santalucia* 232 F.3d at 300 (duty to account based on partners' fiduciary duties); *Ajettix, Inc. v. Raub*, 9 Misc.3d 908 (Sup. Ct. 2005)(post-dissolution, partners owe a continuing fiduciary duty with respect to the winding up of the partnership and the preservation of partnership assets); *Rhein v. Peeso*, 194 A.D. 274, 276-277 (1st Dep't 1920).

---

[9] This sentence was actually superseded by the Authorization. Keefe Decl. Ex. A.

[10] In their summary judgment brief, the Law Firms state "when a partnership dissolves, the partners owe duties to wind-down and liquidate the partnership assets and remaining partnership business." SJ Br. at 19.

The Law Firms argue that under Art. 10.b. a Partner is deemed to have withdrawn involuntarily the day before dissolution. (Opp. at 19). Art 10.b of the Agreement provides:

> [i]n the case of any persons who shall have been Equity Partners at the time of such termination or dissolution of the Partnership **and who shall not continue as partners in any entity which shall succeed to the business of the Partnership under the name Coudert Brothers**, each such person shall be entitled to receive from the Partnership ... those payments provided for pursuant to Article 6(k) and Article 11 of this Agreement, as though such person had Withdrawn involuntarily upon the day preceding such termination or dissolution of the Partnership. (emphasis added).

This provision cannot amount to a *Jewel* waiver for several reasons. First, while the Law Firms argue that dissolution does not create property rights (SJ Brief at 10-11), they cannot dispute that dissolution does not terminate existing property rights. As noted above, the Matters were partnership property prior to dissolution, and dissolution did not alter Coudert's interest in those cases. Second, Art. 10.b does not apply here because the partners continued to bill and generate fees for Coudert and, as such, they continued as partners after dissolution in an entity named Coudert which succeeded to the business of the pre-dissolved entity. Supplemental Declaration of Charles B. Keefe ("Supp. Keefe Decl."), Ex. B. Third, while the Law Firms try to contort Art. 10.b into an implicit *Jewel* Waiver, law firms adopting *Jewel* Waivers do so explicitly by expressly releasing the claims of both the partners and the partnership to partnership property. *See* Adler Decl. at Exs. 15-17 (attaching *Jewel* Waivers from other law firms (Brobeck, Heller Ehrmann LLP and Thelen LLP) that expressly release claims by the partners and the partnership).[11] On its face, Art. 10.b does not contain such a release.

Moreover, the referenced language in Article 10.b refers only to payments that the

---

[11] The Law Firms also neglect to mention that the Authorization provided that the Executive Board was permitted to "grant waivers" notwithstanding any contrary provisions in the Agreement, and that such a *Jewel* Waiver was in fact granted to Orrick (which waiver DSI is seeking to avoid as a fraudulent conveyance). *See DSI v. Orrick, Herrington & Sutcliffe, LLP*, 11-Civ.-6337 (CM). *See* Supp. Keefe Decl., Ex. A.

partners can expect to receive from Coudert, and not to their post-dissolution obligations. Finally, Article 10.b, which relates to dissolution, of course does not even mention Article 12 of the Agreement (cited by the Law Firms, Opp. at 18), which relates solely to the departure obligations of partners who withdrew voluntarily in the non-dissolution context. As previously noted, Article 10.a of the Agreement provides that "dissolution and winding up, and the rights of the Partners in connection therewith, shall be governed by the provisions of the [NYPL]."

C.      Cases From Other Jurisdictions Are Entitled to Significant Precedential Weight

The Law Firms do not deny that every reported decision has found that under the UPA, hourly cases are assets of the dissolved firm. Brief at 10. Those decisions are entitled to "significant precedential weight" to ensure that the NYPL is interpreted uniformly with the law of the other states enacting the UPA. NYPL § 4(4); *Kirsch*, 181 A.D. 2d at 225 (citing § 4(4)).[12] According to the Law Firms, these out-of-state cases are "irrelevant" because the NYPL does not govern the issue before the Court, and the out-of-state decisions rely simply on policy. Opp. at 14. The Law Firms also contend that this Court is free to ignore the out-of-state decisions because, in their view, those decisions treat unfinished business as "contract-like assets," while New York purportedly limits the dissolved firm to compensation for "its own services performed." Opp. at 14. The Law Firms ignore the decisions themselves.[13]

New York's application of the unfinished business rule under the UPA in the law firm

---

[12] If New York courts follow the decisions from other jurisdictions on contingency cases, there is no basis not to follow such decisions concerning hourly matters as well pursuant to NYPL 4(4).

[13] While the Law Firms argue that such out-of-state cases are 'irrelevant" (and do not even bother to discuss the cases cited at pp. 19-21 of the Brief, including the highly relevant decision of *Robinson v. Nussbaum*), they cite the Missouri decision in *Welman v. Parker*, 328 S.W.3d 451 (Mo. Ct. App. 2010) no less than eight times. *Welman*, which the Law Firms claim embodies the "modern rule" (Opp. At 16), makes clear that Missouri follows the *quantum meruit* approach enunciated in in *Aurnou v. Greenspan*, 161 A.D.2d 438 (1st Dep't 1990) of limiting the old firm to the value of its pre-dissolution services, which was later expressly rejected by the New York cases and is thus contrary to New York law.

context is not materially different from that of other states. As *Kirsch* states, "ascribing a value to pending contingent fee personal injury files as a partnership asset in dissolution is the prevailing position in other States which, like New York, have adopted the [UPA]." *Kirsch* at 225.  Like New York, these out-of-state cases generally provide that the dissolved firm is entitled to "profits" from the unfinished matters. *Compare Beckman v. Farmer*, 579 A.2d 618, 636 (D.C. 1990); *Dwyer v. Nicholson*, 193 A.D.2d 70, 71 (2d Dep't 1993).  Like New York, the other states perform an accounting pursuant to the UPA under which a partner has the option of receiving the value of his interest at the date of dissolution or in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership. *Compare Kirsch* at 226; *Bader v. Cox*, 701 S.W.2d 677, 681 (Tex. App. 1985).

Contrary to the Law Firms' contention, other states do not generally provide the entire fee to the dissolved firm, and like New York courts, allow the new firm to receive some credit in the form of post-dissolution expenses. *See e.g. Bader*, 701 S.W.2d at 683; *Jewel*, 156 Cal.App.3d at 180 (old firm is entitled to only <u>net</u> fees, not <u>all</u> fees received, and new firm is entitled to retain its post-dissolution expenses in winding up the matters).  In discussing the new firm's potential recovery for its "postdissolution efforts, skill and diligence," *Kirsch* relied on *Bader v. Cox* for the proposition that the new firm may be entitled to such credits.

*Sexter v. Kimmelman,* 19 A.D. 3d 298 (1st Dep't 2005) does not confirm the validity of *Burke* and *Mandel.*  Opp at 12-13.  Indeed, it confirms just the opposite.  In *Sexter*, the Appellate Division applied the *Santalucia* rule as enunciated in *Murov v. Ades,* 12 A.D. 3d 654 (2d Dep't 2004) to the Kassover contingency matter. *Id.* at 299. The Court determined that the Kassover matter should be apportioned based on the "valuable work" performed before dissolution and the "valuable work" performed after dissolution. *Id.*  As to the hourly estate matters (the Voute and

Davis estate matters), the court ordered that <u>all</u> of these fees belonged to the dissolved law firm either because: (i) the percentage was fixed by statute and, as a result the fee was earned at the time of the engagement or (ii) the failure to produce time records reflects that no portion of the fees were attributable to post-dissolution efforts. *Id; see also Sexter v. Kimmelman,* 43 A.D. 3d 790 (1st Dep't 2007). These facts confirm that the court was applying *Santalucia,* and not the now-rejected holding in *Aurnou* upon which *Burke* and *Mandel* relied.

D.  Application of the Doctrine Does Not Violate RPC 5.6

The Law Firms contend that the *Cohen* Rule must be applied to law firms in dissolution to prevent purported restraints on competition in violation of RPC 5.6. Opp. at 14-16. As noted above, however, the New York cases do not apply the *Cohen* Rule to dissolved law firms.

In any case, the Law Firms' argument that requiring partners to account for hourly cases will restrain competition in violation of RPC 5.6 is without merit. Because Coudert is a dissolved law firm, there can be no serious argument that it seeks to compete with its partners or restrain competition. Further, as the Law Firms note, New York law prohibits <u>agreements</u> restricting a lawyer's right to practice. *See* RPC 5.6.[14] The Law Firms cite *BDO Seidman v Hirschberg,* 93 N.Y.2d 382 (1999) for the proposition that law firm partnership <u>agreements</u> restricting competition have been found unenforceable. Unlike *BDO,* DSI is not seeking to enforce any <u>agreement</u> against the Law Firms that restricts competition, but rather to apply a <u>statute,</u> the NYPL.[15] In effect, the Law Firms contend that the Court should create an exception to the fiduciary duties owed by Coudert's partners under the NYPL solely for hourly matters.

---

[14] While the Law Firms contend that the out-of-state cases follow different rules concerning competition between lawyers, they cite no authority suggesting that their disciplinary rules are different from New York's. In fact, the District of Columbia has adopted a provision identical to New York's RPC 5.6, yet competition concerns did not preclude the District Court's ruling in *Robinson* that hourly cases are assets of the dissolved firm under the UPA.

[15] Indeed, DSI contends that the Agreement is <u>silent</u> on this issue – a proposition that most of the Law Firms agreed with, until recently – and as such, the Court must apply the NYPL.

DSI respectfully submits that it would require a significant leap to conclude that the New York Court of Appeals would reach that result, and there is certainly no clear or convincing precedent or evidence upon which to reach such a conclusion.[16]

Even if the Law Firms' alleged fears were legitimate (and they are not), the solution lies entirely within the control of every law firm: they can prevent the doctrine's application by addressing it in their partnership agreement. *Robinson*, 11 F. Supp. 2d at 6. However, if a law firm or its partners choose not to address these issues, the consequence is that partners remain bound to honor their fiduciary duties. Indeed, requiring attorneys to comport with their fiduciary duties is the very point of the unfinished business doctrine as applied in New York.

E.    DSI Is Entitled To Partial Summary Judgment

All of the material facts that support entry of summary judgment are set forth in the SMF and are unrebutted. As a result, partial summary judgment should be granted in plaintiff's favor.

## CONCLUSION

For these reasons, DSI's cross-motion should be granted.

Dated: New York, New York
February 14, 2012

McCARTER & ENGLISH, LLP
Attorneys for Development Specialists, Inc.,
Plan Administrator for Coudert Brothers
LLP

/s/ David J. Adler
David J. Adler
Joseph R. Scholz
245 Park Avenue, 27th Floor
New York, New York 10167
(212) 609-6800 – Telephone
(212) 609-6921 – Facsimile

---

[16]  If the Court were to accept the Law Firms' invitation to exempt them from the doctrine, one group of lawyers would have a fiduciary duty to account to their dissolved firm, while the other would not. *Santalucia* declined to create an exception to the unfinished business rule for professional corporations because it would create a "special category of lawyers … who would not owe fiduciary duties to their firms." *Santalucia*, 232 F.3d at 299.