UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVELOPMENT SPECIALISTS, INC.,
in its capacity as Plan Administrator for
Coudert Brothers LLP,

              Plaintiff,

    v.

DECHERT LLP,

              Defendant.

11 Civ. 5984 (CM) (MHD)

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S MOTION
# FOR TURNOVER OF PRIVILEGED DOCUMENTS

MILLER & WRUBEL P.C.
570 Lexington Avenue
New York, New York 10022
(212) 336-3500
*Attorneys for Defendant Dechert LLP*

Dated:   New York, New York
           March 28, 2014

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ............................................................................................................................. 8

I.      THE PRIVILEGED DOCUMENTS ARE PROTECTED
UNDER APPLICABLE LAW ................................................................................... 8

         A.     New York Law Protects the Privileged Documents ..................................... 9

         B.     Federal Law Protects the Privileged Documents ........................................ 11

         C.     French Law Protects the Privileged Documents ......................................... 13

II.     THIS COURT SHOULD ORDER DSI TO TURN OVER
THE PRIVILEGED DOCUMENTS TO DECHERT ............................................ 14

III.    THE METHODOLOGY FOR DETERMINING WHICH
DOCUMENTS ARE PRIVILEGED ....................................................................... 15

CONCLUSION ...................................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*,
   2009 U.S. Dist. LEXIS 11537 (E.D.N.Y. Feb. 13, 2009) ........................................................ 15

*Campbell v. Aero. Prods. Intl.*,
   37 A.D.3d 1156 (N.Y. App. Div. 4th Dep't 2007) .................................................................. 15

*Chrysler Capital Corp. v. Bankers Trust Co.*,
   1992 U.S. Dist. LEXIS 3176 (S.D.N.Y. 1992) ....................................................................... 12

*Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*,
   301 A.D.2d 23 (1st Dep't 2002) ............................................................................................. 15

*Manufacturers & Traders Trust Co. v. Servotronics, Inc.*,
   132 A.D.2d 392 (4th Dep't 1987) ........................................................................................... 11

*N.Y. Times Newspaper Div. v. Lehrer McGovern Bovis, Inc.*,
   300 A.D.2d 169 (1st Dep't 2002) ..................................................................................... 10, 11

*Oakwood Realty Corp. v. HRH Constr. Corp.*,
   51 A.D.3d 747 (2d Dep't 2008) .............................................................................................. 10

*Valentin v. Bank of N.Y. Mellon Corp.*,
   2011 U.S. Dist. LEXIS 40711 (S.D.N.Y. 2011) ..................................................................... 16

**Statutes**

Fed. R. Civ. P. 26(b)(5)(B) ............................................................................................... 13, 15

N.Y. Civ. Prac. L. & R. 4503 ................................................................................................ 9, 10

N.Y. Civ. Prac. L. & R. 4503(a)(1) ....................................................................................... 9, 10

**Other Authorities**

French Penal Code Art. L. 226-13 ............................................................................................. 14

**Rules**

Federal Rule of Evidence 502 .................................................................................... 13, 15, 16

Federal Rule of Evidence 502(b) ............................................................................................... 12

Defendant Dechert LLP ("Dechert") respectfully moves for an order compelling Development Specialists, Inc. ("DSI") to turn over promptly to Dechert privileged documents (the "Privileged Documents") containing Dechert's client data and e-mails it holds from the period October 2005 to early 2006, without retaining any copies, disclosing them to any other persons or reviewing them beyond the extent necessary to comply with the Court's order.

By Order dated March 21, 2014, the Court permitted Dechert to move to compel turnover of the Privileged Documents in plaintiff's custody by formal motion "premised on competent evidence to establish that specific documents were subject to a specific privilege and that the privilege has not been waived," and to provide a "methodology for plaintiff to determine which documents are privileged." In the interim, DSI was required to "make no use in this litigation of any documents that, based on its review, are colorably protected by a relevant attorney client privilege."

We show that the documents (including emails) that were generated or used by Dechert personnel who shared the Paris office space with Coudert Freres ("CF") during the period from October 2005 to early 2006 (the "Transition Period") are the universe of Privileged Documents involved. We also show that Dechert's clients did not waive the privilege and Dechert took appropriate steps to protect the privilege, both in 2005 and after learning on February 21, 2014, that DSI possessed the Privileged Documents. We propose a reasonable methodology to identify the documents which are privileged.

### PRELIMINARY STATEMENT

In 2005, pursuant to an asset purchase agreement (the "APA"), Dechert acquired certain assets and hired certain personnel of CF, the Paris office of Coudert Brothers LLP ("CB"). Thereafter during the Transition Period the CF personnel who became Dechert

attorneys and staff and those who continued as CF personnel jointly occupied the CF space. The APA provided that Dechert and CF would share CF's administrative resources, including its computer systems. For the Transition Period, the two firms implemented procedures intended to carefully segregate each firm's client data and email. The servers on which electronic files, such as Microsoft Word and Excel documents were saved (the "Document Server") were partitioned between the two firms. The Dechert personnel were given "dechert.com" email addresses on the email servers (the "Email Server"). This was done in order to prevent unauthorized access by either firm of the other's client information.

During the Transition Period CF continued its regular practice of backing up the servers in CF's Paris office to tapes (the "Backup Tapes"), which were then deposited in a secure offsite bank vault for disaster recovery, providing a daily "snapshot" of the servers so that they could be restored in an emergency. CF used different tapes for each business day. Each day the Backup Tape for that day was put in the vault, and the corresponding tape from the prior period was removed to be overwritten in the normal course (*i.e.*, this Monday's tape would be put in the vault, and last Monday's tape would be removed and overwritten on the next Monday). At some point CF ceased functioning as a law firm, and dismantled its IT infrastructure, presumably ceasing its practice of making Backup Tapes. Apparently CF did not overwrite or erase some or all of the Backup Tapes.

On February 21, 2014, DSI told Dechert that it had restored Backup Tapes and found that they included Privileged Documents. The Privileged Documents were never intended by Dechert or CF to be available to CF personnel. Consistent with CF's historical practice, the Backup Tapes were instead thought to have been overwritten (or not used, or discarded) in the normal course, as CF wound down. There certainly was no intention that they would be

2

preserved for nearly a decade and remain available to CB or CF, much less DSI, a private company engaged in litigation against Dechert and numerous other law firms. The Privileged Documents include communications between Dechert and its clients, and work-product relating to those clients.

When Dechert became aware that DSI had the Privileged Documents and was reviewing them, Dechert immediately demanded that DSI cease reviewing them and turn them over to Dechert. DSI has refused, claiming that any privilege was waived because DSI owns the Backup Tapes. DSI is mistaken.

DSI does not contend that there has been an intentional waiver and there was none. There also has been no implied waiver. Dechert at all times used reasonable care in handling privileged and confidential client documents, and has acted promptly to remedy this situation. In 2005, both Dechert and CF carefully planned to keep confidential client information separated. No Dechert client waived the privilege. The fact that the Privileged Documents have come into the possession of DSI is an unexpected consequence of the fact that Backup Tapes for the Transition Period still exist despite that CF has been out of business for many years. To prevent further tampering with the privilege, this Court should require DSI to turn over and not review the Privileged Documents, subject to the protocol described more fully *infra*.

## STATEMENT OF FACTS

The APA provided that Dechert would acquire certain assets, assume certain liabilities and hire certain personnel of CB and CF. *See* Declaration of Samuel Jegou, dated March 28, 2014 ("Jegou Decl.") ¶ 3; Declaration of Xavier Nyssen, dated March 28, 2014 ("Nyssen Decl.") ¶ 3; Declaration of Joel M. Miller ("Miller Decl.") ¶ 7, Exs. C, D. The APA provided for a Transition Period from the Withdrawal Effective Date, which was defined to be October 26, 2005 (*see* Miller Decl. Ex. D), until early 2006, during which those joining Dechert

3

shared CF's office space and computer equipment with those remaining at CF.  The Transition Period ended early in 2006 when Dechert obtained a larger office space to accommodate both its current and new staff in Paris.  *See* Jegou Decl. ¶¶ 4 – 5; Nyssen Decl. ¶¶ 4 – 6.

The APA (Miller Decl. Ex. C) has numerous provisions reflecting the parties' intent to separate and keep confidential client documents and information and to comply with "applicable ethical and bar requirements."  In particular:

- CF agreed to provide Dechert with access to its office space during the Transition Period "provided that all Dechert personnel (legal and non-legal) shall respect required obligations of confidentiality with respect to files of clients continuing as Coudert client."  Miller Decl. Ex. C, ¶ 4(b).

- Coudert agreed to "continue with its current leases and maintenance arrangements for servers, network maintenance and similar areas necessary to provide the required level of support . . . as currently provided."  *Id*. at ¶ 4(c)).

- During and after the Transition Period the parties agreed to cooperate with each other "with respect to forwarding of mail and e-mail to the intended recipient and similar matters."  *Id*. at  ¶ 4(f), (g), (h).

- The parties also agreed that Coudert would "at the request of Clients, transfer to Dechert all client files of Coudert lawyers joining Dechert, including electronic files, subject to applicable ethical guidelines and bar requirements" and "such other data and files . . . subject to applicable ethical guidelines and bar requirements."  Dechert agreed to allow Coudert

"such access to such files as Coudert may reasonably request, subject to applicable ethical requirements and bar requirements . . . ." *Id.* at § 5(b).

The APA makes clear that the parties were aware of their respective ethical obligations, and agreed to cooperate as necessary during the Transition Period to respect those obligations and to implement appropriate safeguards. Nothing in the APA contemplates that CF would be permitted to retain Dechert data on the Backup Tapes after Dechert personnel left the CF office.

As the APA contemplated, during the Transition Period Dechert personnel shared the use of CF's office facilities, including the hardware and software for the Documents Server and the Email Server. *See* Jegou Decl. ¶¶ 6 – 9. Because of the ethical rules applicable to French attorneys, including a duty of "professional secrecy" barring attorneys from disclosing confidential information provided to them by their clients, Dechert, CB and CF worked together to develop protocols to prevent improper disclosures of privileged and confidential information. *See* Nyssen Decl. ¶¶ 7 – 11; Jegou Decl. ¶¶ 7 – 8.

Some of the protections for client information were described in a memorandum prepared by Dechert and circulated to CB and CF personnel prior to Transition Period (the "IT Memo," attached to the Nyssen Decl. as Ex. A). Notably, in the covering email, Jonathan Wohl (an attorney who did not join Dechert), on behalf of CF, stated that the plan was acceptable as proposed (other than that Dechert would use, not own, the computer equipment). Among the protections provided for in the IT Memo were:

- "Dechert Partners will be required to obtain written client authorizations in order to access data stored on the current Coudert Brothers Paris data system." Nyssen Decl. Ex. A at DSI 000051006.

- "As of the Effective Date, Coudert Brothers LLP Data should not be accessed by Dechert users unless written release from the Client has been obtained and provided to Coudert Brothers LLP." *Id.*
- "At such time as copies of properly identified email, calendars and contact information is [*sic*] transferred to Dechert, the original data will be purged from Coudert Brothers LLP systems . . . ." *Id.* at DSI 000051007.
    - "All desktop PCs will be the property of Dechert LLP."
    - On these PCs Dechert will replace the "hard drives with Dechert standard desktop image."
    - The "removed hard drives will be secured and stay as Coudert Brothers LLP property." *Id.* at DSI 000051009.

      As with the APA, these provisions and others in the IT Memo reflect the intention—expressly stated in the IT Memo—of Dechert, CF and CB *"to erect a logical and ethical wall between the Coudert Brothers LLP and Dechert LLP IT infrastructures."* (Emphasis added.) *Id.* at DSI 000051006. *See also* Jegou Decl. ¶¶ 9 – 14; Nyssen Decl. ¶¶ 10 – 11. Importantly, this was not just the concern of Dechert. CF cooperated in the development and implementation of the "logical and ethical wall." To effectuate this wall, the relevant Document Server was partitioned between CF and Dechert so neither could improperly access the other's data. *See* Jegou Decl. ¶ 8 – 14. On the Email Server, Dechert's new personnel were given a dechert.com email address for incoming and outgoing emails.

      However, the IT Memo did not provide for the fact that CB operated a backup system for the electronic information located on the CF servers. Indeed, the fact that CF retained this data after the need for emergency restoration ended was likely a violation of the firms'

understanding as to the creation of a "logical and ethical wall" and at least one specific provision for the treatment of the transferred data.  *See* Nyssen Decl. Ex. A at DSI 000051007 (providing that certain "original data will be purged from Coudert Brothers LLP systems" upon transfer to Dechert unless required for CF's client representation).

The fact that the Backup Tapes were not expressly provided for is not surprising. That system was designed as a disaster recovery system, rather than as a method for storing or archiving client data for regular use by attorneys and staff.  *See* Jegou ¶¶ 15 – 16.  Each tape was overwritten on a regular basis.  The Backup Tapes were not used to retrieve data as part of CF's daily operations.  *See* Jegou Decl. ¶ 16.  Nor were the Backup Tapes intended to be accessible to users of the computer systems; indeed, the process was largely invisible to end-users.  *See id*.

We have now discovered that the Backup Tapes backed up electronic data from Dechert's "side" of the "logical and ethical wall" the firms had created, including data on Dechert's side of the Documents Server and emails to and from dechert.com addresses on the Email Server.  Until this dispute, Dechert was unaware that CB or CF had retained Backup Tapes that included any Dechert data or emails.  *See* Jegou Decl. ¶ 17; Nyssen Decl. ¶ 12 – 15.  The parties neither intended nor expected that CB would retain any Dechert data after the Transition Period was completed.  *See* Nyssen Decl. ¶ 15.  This is confirmed by the attention devoted to preserving client confidentiality reflected in the APA and the IT Memo, discussed *supra*.

At our request, DSI counsel told us that the Backup Tapes contain "mailboxes and other ESI" for those "custodians," *i.e.*, Dechert personnel, who were formerly Coudert personnel. DSI has told us that it has located relevant documents on both the Email Server and the Document Server on the Backup Tapes by, *inter alia*, use of agreed search terms.  These documents which DSI has located on the Backup Tapes by use of the search terms and those to

7

and from dechert.com are those which are colorably privileged and relevant to this action.[1]  DSI should be ordered to return those documents to Dechert for its review to locate and log those which are privileged and return the others called for by DSI's request and the parties' agreement.

## ARGUMENT

DSI does not dispute that it is in possession of Privileged Documents from the Transition Period.  Instead, DSI has consistently and wrongfully taken the position that "any information restored from the back up tapes relating to the issues being litigated in the Dechert action are our property and any possible claim of confidentiality or privilege with respect to communications contained therein has been waived in any event."  *See* Miller Decl. ¶ 2 Ex. A.

This claim is baseless.  Custody of a privileged document does not give a person the right to review and use the document.  Nor did Dechert or its clients waive any privilege.  The fact that DSI has Backup Tapes that contain any Dechert data at all is an unexpected result of highly unusual circumstances.  DSI should never have had the Privileged Documents, and should not be permitted to retain them.

### I.

### THE PRIVILEGED DOCUMENTS ARE PROTECTED UNDER APPLICABLE LAW

The Privileged Documents are those Dechert personnel accessed during the Transition Period and the dechert.com emails sent or received at that time.  Those documents are at least colorably privileged and are protected from disclosure and use by DSI.

Federal Rule of Evidence 501 provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege

---

[1] We asked DSI to provide the "directory structure and files names on the backup tapes," but DSI has refused to do so.  *See* Miller Decl. ¶¶ 5 – 6.

8

>unless any of the following provides otherwise:
>>the United States Constitution;
>>a federal statute; or
>>rules prescribed by the Supreme Court.
>
>But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

In this action, DSI has asserted both federal claims (under the Bankruptcy Code) and New York State law claims (for an accounting and under the New York Debtor-Creditor Law). As discussed *infra*, either New York or federal law is most likely applicable to the Privileged Documents, and under either law the Privileged Documents should be returned.

### A.     New York Law Protects the Privileged Documents

Attorney-client privilege in New York is governed by CPLR 4503, which provides in relevant part that a party who obtains privileged information without the client's knowledge shall not disclose such information:

>Unless the client waives the privilege, an attorney or his or her employee, *or any person who obtains without the knowledge of the client* evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, *shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication* . . . .

CPLR 4503(a)(1) (emphasis added).

The statute, by its terms, applies to any person—like DSI—who obtains privileged materials without the knowledge of the affected client. Here, DSI does not claim that any Dechert client was aware that its documents and communications would ever be in the possession of DSI, or even that they would remain in the possession of CF after the Transition Period was complete. No Dechert client intended to waive any privilege. *See* Nyssen Decl. ¶ 14. There can therefore be no express waiver of privilege by the client under CPLR 4503(a)(1).

In this circumstance DSI may not be allowed to disclose such information. Such disclosure violates CPLR 4503. DSI has threatened to disclose, or already has disclosed such information by making it available to its counsel. DSI's counsel intends to use and disclose such information in this action.

Because there has been no express waiver of the privilege, the only mechanism by which Dechert's clients could have forfeited their privilege is by the inadvertent disclosure of privileged materials. An inadvertent disclosure will not operate as a waiver when "the client intended to maintain the confidentiality of the document, reasonable steps were taken to prevent disclosure, the party asserting the privilege acted promptly after discovering the disclosure to remedy the situation, and the parties who received the documents will not suffer undue prejudice if a protective order against use of the document is issued." *Oakwood Realty Corp. v. HRH Constr. Corp.*, 51 A.D.3d 747, 749 (2d Dep't 2008) (citing *N.Y. Times Newspaper Div. v. Lehrer McGovern Bovis, Inc.*, 300 A.D.2d 169 (1st Dep't 2002).

Here, none of the factors required to create an inadvertent waiver is present. That the clients and their counsel intended to preserve the confidentiality of the Privileged Documents is shown by the terms of the APA and the contents of the IT Memo, which was prepared contemporaneously for the very purpose of preserving appropriate confidentiality. The declarations of Xavier Nyssen and Samuel Jegou further demonstrate the efforts taken by Dechert to ensure that appropriate protections were in place and no client waived privilege. Those documents also testify to the reasonableness of the steps taken to prevent disclosure in 2005.

Further, Dechert only learned that any *Dechert* materials were preserved on the CF Backup Tapes on February 21, 2014, as a result of an email from DSI's counsel. *See* Miller

10

Decl. ¶ 2 Ex. A.  The next business day, after the parties were before the Court with respect to another discovery matter, Dechert's counsel spoke with DSI's counsel and demanded that DSI cease review of the Privileged Documents and return them to Dechert.  *See* Miller Decl. ¶ 3.  DSI's counsel refused, and responded by saying that any privilege had already been waived by virtue of DSI's ownership of the Backup Tapes.  *See* Miller Decl. ¶ 4.  Dechert then investigated how DSI had the Privileged Documents and continued to seek relief with respect to the Privileged Documents, culminating in this motion.  *See* Miller Decl. ¶ 5.  Dechert has "acted promptly after discovering the disclosure to remedy the situation."  *N.Y. Times*, 300 A.D.2d at 172.

Finally, there is no prejudice to DSI.  DSI has not relied on any of the Privileged Documents in, for example, examining witnesses or preparing motions.  *See, e.g.*, *Manufacturers & Traders Trust Co. v. Servotronics, Inc.*, 132 A.D.2d 392, 400 (4th Dep't 1987) (no prejudice because party "moved promptly to correct the error and did not compound it by eliciting testimony relative to the documents in question").

**B.**     **Federal Law Protects the Privileged Documents**

Enacted in 2008, Federal Rule of Evidence 502(b) provides that:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>   (1) the disclosure is inadvertent;
>   (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>   (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

This rule is similar to the prior federal common law that governed inadvertent disclosure.  *See, e.g.*, *Chrysler Capital Corp. v. Bankers Trust Co.*, 1992 U.S. Dist. LEXIS 3176 (S.D.N.Y. 1992) (Dolinger, M.J.) ("it is generally accepted that the unintended and erroneous

11

disclosure of a document containing a privileged communication does not constitute a waiver of the privilege if the attorney and client have taken reasonable precautions to ensure confidentiality") (citations, quotation omitted).

Here, Dechert's submissions show that any disclosure was inadvertent, and DSI does not appear to contend otherwise. The Privileged Documents were found by DSI on Backup Tapes that were never intended to provide a permanent archive of client data. *See* Nyssen Decl. ¶ 14; Jegou Decl. ¶¶ 15 – 16. The fact that eight-year old backups still existed, and that they contained Dechert data from the Transition Period was a surprise—it was never intended that CF would retain any Dechert data once the transition was complete. *See* Nyssen Decl. ¶¶ 14 – 15; Jegou Decl. ¶¶ 16 – 17. The first factor is therefore satisfied.

As discussed *supra*, Dechert (and CB and CF) acted appropriately in 2005 to protect privilege, and Dechert immediately took steps to remedy the situation as soon as it learned that Dechert documents were located on the Backup Tapes, satisfying the second factor.

Dechert also satisfied the third test, but DSI has violated Rule 26(b)(5)(B). The Rule provides:

> (B) *Information Produced*. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, *a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved*; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

(Emphasis added.)

As required, Dechert notified DSI of its claim that DSI had the Privileged Documents. DSI, however, refused to "promptly return, sequester or destroy" the Privileged Documents and any copies. Instead, in violation of the Rule, DSI has refused to agree not to disclose the privileged information or to retrieve it from its counsel.

As required, Dechert has taken "reasonable steps" to rectify the claim as provided in Rule 26(b)(5)(B).

Accordingly, Dechert has satisfied all three elements of Federal Rule of Evidence 502.

C.      **French Law Protects the Privileged Documents**

Because New York and federal law prohibit the Privileged Documents from DSI's review in this action, this Court need not consider French law. If the Court considers French law, that law supports this application by protecting client secrecy.

French law provides for the protection of all "professional secrets," imposing not merely a duty of secrecy but criminal liability for improper disclosure. *See* French Penal Code Art. L. 226-13 (available in English translation at http://www.legifrance.gouv.fr/Traductions/en-English/Legifrance-translations). Further, the materials at issue here—communications between French Dechert partners and their clients, and communications between French Dechert partners with respect to those matters—would be protected from disclosure in France, and these protections cannot be waived or forfeited. *See* Nyssen Decl. ¶¶ 7, 8, 14. The APA provided numerous times that the parties were to respect the French rules. *See* Miller Decl. Ex. C §§ 4, 5.

## II.

## THIS COURT SHOULD ORDER DSI TO
## TURN OVER THE PRIVILEGED DOCUMENTS TO DECHERT

Since the Privileged Documents colorably are privileged but held by a party not entitled to disclose or review them, they should be returned to Dechert for it to determine which are privileged. The privileged ones will be logged and the remainder which are appropriate for production will be returned to DSI to be treated confidentially pursuant to this Court's prior Order.

No other result will fairly protect the privilege. DSI has never stated that it would refrain from reviewing Privileged Documents relevant to this action, despite Dechert's prompt claim of privilege. To the contrary, DSI has stated that it will refrain from reviewing only those Privileged Documents *not* relevant to this action. See Miller Decl. Ex. A ("We intend to avoid any review *of such unrelated communications* between Dechert and its clients, to the extent practicable, in connection with our review of documents for purposes of discovery.") (Emphasis added.) This is in violation of applicable law. See Fed. R. Civ. P. 26(b)(5)(B) (requiring party in possession of Privileged Documents to refrain from their review or use until the dispute is resolved). Judicial relief is therefore necessary.

The appropriate remedy is the return of the Privileged Documents without further review by DSI. The return of inadvertently produced privileged documents is required under New York law. *See, e.g.*, *Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 301 A.D.2d 23, 34 (1st Dep't 2002) ("directing defendants to return all copies of said document to plaintiffs"); *Campbell v. Aero. Prods. Intl.*, 37 A.D.3d 1156, 1157 (N.Y. App. Div. 4th Dep't 2007) ("Supreme Court properly granted plaintiffs' motion for a protective order directing

defendants to return a document that was inadvertently disclosed to defendants' attorneys on the ground that it was protected by the attorney-client privilege").

It is also the appropriate remedy under federal law. This is the policy reflected in Fed. R. Civ. P. 26(b)(5)(B). *See infra. See also Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, 2009 U.S. Dist. LEXIS 11537 (E.D.N.Y. Feb. 13, 2009) (holding that inadvertently produced documents "should be returned to plaintiff or destroyed"). Return of protected documents is also appropriate under Federal Rule of Evidence 502. *See infra; see also Valentin v. Bank of N.Y. Mellon Corp.*, 2011 U.S. Dist. LEXIS 40711 (S.D.N.Y. 2011) (granting "order requiring the plaintiff to return documents that were inadvertently produced").

While courts alternatively order destruction of such documents, in those cases the other party already has copies in its possession. Here, Dechert may not have copies of all the Privileged Documents so return, not destruction, is appropriate.

### III.

### THE METHODOLOGY FOR DETERMINING WHICH DOCUMENTS ARE PRIVILEGED

The universe of documents is clearly defined. It is those documents and emails generated or modified by Dechert personnel, or sent to, or received by, the dechert.com email address, during the Transition Period, and which were preserved (contrary to the intentions and expectations of CB, CF and Dechert) on the Backup Tapes.

Despite Dechert's urgent and repeated requests, DSI has refused to be forthcoming with specific information regarding the Backup Tapes, or otherwise to cooperate in resolving this issue. Nonetheless, there is no impediment to DSI locating and returning the Privileged Documents to Dechert for review and production as appropriate. DSI should not be

allowed to determine which documents are privileged.  It has neither the right to review privileged documents nor the necessary knowledge to determine privilege.

As to emails, DSI has informed us that it has discrete mailboxes for each of the "relevant custodians" which would include former CF personnel who joined Dechert.  This is consistent with our understanding of the structure of the Email Server during the Transition Period.  *See* Jegou Decl. ¶¶ 11 – 12.

As to non-email documents, DSI admits it has documents for the "custodians" the parties agreed it would search for relevant documents.  This is consistent with the partitioned structure of the Dechert Server.  *See* Jegou Decl. ¶¶ 9 – 10; Miller Decl. ¶ 6.

DSI and Dechert have agreed on search terms for DSI to use to search for the relevant documents.  DSI says it has applied those terms to the agreed custodians on the Backup Tapes, including both those on the Document Server and the Email Server.  The documents that search yields are colorably privileged because prepared or accessed by Dechert's personnel or sent to or received by them.  Thus, DSI can easily locate the documents (and presumably has already done so) which are colorably privileged (all that is required at this time).  (DSI can hardly deny this since it says it has refrained from reviewing privileged documents "not relevant" to this action.)  (Miller Decl. Ex. A.)  This can be done without any added expense or inconvenience to DSI.

DSI should be ordered to turn over those documents to Dechert for review.  Dechert will then promptly conduct a review for privilege and responsiveness.  Dechert will produce to DSI any non-privileged documents responsive to the parties' discovery demands and agreements and prepare a privilege log.

## **CONCLUSION**

For the foregoing reasons, the Court should order DSI to cease reviewing the Privileged Documents, and to promptly return them to Dechert without retaining any copies. Dechert will review the documents for privilege. This procedure will honor the requirements of the privilege to avoid prejudice to Dechert's clients and without prejudice to DSI.

Dated: March 28, 2014

                            MILLER & WRUBEL P.C.

                            By: /s/ Joel M. Miller
                                Joel M. Miller
                                S. Christopher Provenzano
                                Nicholas Cutaia
                                570 Lexington Avenue, 25th Floor
                                New York, New York 10022
                                Telephone: (212) 336-3500
                                Facsimile: (212) 336-3555

                                *Attorneys for Defendant Dechert LLP*